1   ROBERT H. BUNZEL (SBN 99395)
        rbunzel@bzbm.com
2   PATRICK M. RYAN (SBN 203215)
        pryan@bzbm.com
3   CHAD E. DEVEAUX (SBN 215482)
        cdeveaux@bzbm.com
4   CHRISTOPHER W. GRIBBLE (SBN 285337)
        cgribble@bzbm.com
5   BARTKO ZANKEL BUNZEL & MILLER
    A Professional Law Corporation
6   One Embarcadero Center, Suite 800
    San Francisco, California 94111
7   Telephone: (415) 956-1900
    Facsimile:  (415) 956-1152
8
    Attorneys for Defendants COUNTY OF SAN
9   MATEO and CHRISTINA CORPUS

10

11                  UNITED STATES DISTRICT COURT

12          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

13

| | |
|---|---|
| 14  Kevin B. Prasad, | Case No. 5:22-cv-01346-JST |
| 15          Plaintiffs, | **DECLARATION OF CHAD E. DEVEAUX IN SUPPORT OF SAN MATEO COUNTY'S FURTHER ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |
| 16          v. | |
| 17  Carlos G. Bolanos, Kristina Bell, Mark C. Robbins, Alma Zamorra, John W. Munsey, | |
| 18  and John Kovach, | |
| 19          Defendants | |
| 20 | |
| 21  Curtis L. Briggs, Robert Canny, and Matthew Murillo, | Case No. 4:22-cv-05012-YGR |
| 22          Plaintiffs, | |
| 23          v. | |
| 24 | |
| 25  San Mateo County, Carlos Bolanos, Sheriff of San Mateo County, and Frank Dal Porto, | |
| 26  Captain of the San Mateo County Sheriff's Office, | |
| 27          Defendants. | |
| 28 | |

| | | |
|---|---|---|
| 1 | A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo, | Case No. 4:23-cv-01865-DMR |

A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo,

Plaintiffs,

v.

County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County,

Defendants.

Case No. 4:23-cv-01865-DMR

DECLARATION OF CHAD E. DEVEAUX IN SUPPORT OF SAN MATEO COUNTY'S FURTHER ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

I, Chad E. DeVeaux, declare as follows:

1.     I am a principal with Bartko Zankel Bunzel & Miller ("Bartko"), attorneys of record for the County of San Mateo (the "County") and Christina Corpus (collectively the "County"), in *A.B.O. Comix, et al. v. Cnty. of San Mateo*, 4:23-cv-01865-DMR ("*A.B.O.*"). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto. I make this declaration in support of San Mateo County's Further Administrative Motion to Consider Whether Cases Should Be Related.

2.     On March 9, 2023, the *A.B.O.* case was filed in the Superior Court of the State of California for the County of San Mateo. The Summons and Complaint was served by mail, and became effective when the Acknowledgement was signed on March 30, 2023. A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

3.     On April 17, 2023, the County removed the case to the U.S. District Court, California Northern District.

4.     On March 3, 2022, Sheldon Johnson filed his Complaint, *pro se*, in *Johnson v. San Mateo Cnty.*, Case No. 5:22-cv-01342-BLF. A true and correct copy of the *Johnson* Complaint is attached hereto as **Exhibit 2**.

5.     A true and correct copy of the docket in the *Johnson* case is attached hereto as **Exhibit 3**.

6.     A true and correct copy of Judge Labson Freeman's July 11, 2022 Order of Dismissal with Leave to Amend; Denying Motion for Appointment of Counsel in *Johnson*, is attached hereto as **Exhibit 4**.

7.     A true and correct copy of Judge Labson Freeman's August 24, 2022 Order of Dismissal in *Johnson*, is attached hereto as **Exhibit 5**.

8.     On July 25, 2022, plaintiff Kevin Prasad filed his Amended Complaint, *pro se*, in *Prasad v. Bolanos*, Case No. 22-cv-01346-JST. A true and correct copy of the *Prasad* Amended Complaint is attached hereto as **Exhibit 6**.

DECLARATION OF CHAD E. DEVEAUX IN SUPPORT OF SAN MATEO COUNTY'S FURTHER ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

9.      On September 1, 2022, *Briggs v. San Mateo County*, Case No. 22-cv-05012-YGR ("*Briggs*") was filed in the U.S. District Court, California Northern District. A true and correct copy of the *Briggs* Complaint is attached hereto as **Exhibit 7**.

10.     *Prasad* was dismissed on March 27, 2023, *Johnson* was dismissed on August 24, 2022, and *Briggs* was dismissed on December 8, 2022.

11.     On April 17, 2023, concurrently with the Notice of Removal, the County filed an Administrative Motion in Case No. 4:23-cv-01865-DMR to consider whether the *A.B.O.* and *Briggs* cases should be related pursuant to Civil Local Rule ("L.R") 3-12. On April 18, 2023, the County filed this same motion in Case No. 4:22-cv-05012-YGR.

12.     On April 19, 2023, Plaintiffs alerted the County's counsel to *Prasad*, which was served after *A.B.O.* was removed.

13.     The County filed a new L.R. 3-12 administrative motion on April 21, 2023 with Judges Gonzalez Rogers and Judge Tigar that requested the Courts decide the relatedness among *Briggs*, *Prasad*, and *A.B.O.*

14.     On April 21, 2023, Plaintiffs moved to relate *Prasad* and *A.B.O.* 4:22-cv-01346-JST, ECF No. 24. In a footnote, Plaintiffs referenced *Johnson*, which has a lower case number than *Prasad*. *Id.* at 4 n.1.

15.     On April 25, 2023 I emailed Plaintiffs' counsel stating: "We have reviewed Johnson v. San Mateo Cnty., et al., Case No. 5:22-cv-01342-BLF, referenced in footnote 1 to your motion to relate the *A.B.O.* and *Prasad* cases. We believe that *Johnson* potentially implicates L.R. 3-12's relatedness factors, such that we are obligated by L.R. 3-12(b) to file an administrative motion whether cases should be related in that case. Are you willing to stipulate that *A.B.O.* is related to *Johnson*?"

16.     On April 26, 2023, Plaintiffs' counsel replied: "Thanks for reaching out. Plaintiffs do not agree that A.B.O. Comix should be related to Johnson, and can't stipulate to a motion seeking relation of the two cases."

17.     A true and correct copy of my April 25, 2023-April 26, 2023 email correspondence with Plaintiffs' counsel referenced above, is attached hereto as **Exhibit 8**.

DECLARATION OF CHAD E. DEVEAUX IN SUPPORT OF SAN MATEO COUNTY'S FURTHER
ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

18.     Both the *Briggs* and *A.B.O* Complaints concern San Mateo County's contracted-for implementation and use of Smart Communications' ("Smart") technology. *See, e.g.,* Exhibit 1 ¶ 32 (The "County formally entered into an agreement with Smart Communications on September 1, 2021. Pursuant to that agreement, the County agreed to … make digitized mail accessible only on communal tablets and kiosks provided by Smart Communications[.]"); Exhibit 7 ¶ 28 (In September of 2021, the San Mateo Board of Supervisors entered into a written agreement with … Smart Communications Holding, Inc. ... to provide inmate communication services for the Defendants' jails."). These services enable inmates to receive communications on "tablets." Exhibit 1 ¶ 4.

19.     Smart's technology makes correspondence available to inmates in digitized form via tablet or kiosk rather than by paper, thereby preventing the introduction of drugs or other contraband into the jail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 26th day of April, 2023, at San Francisco, California.

_____
Chad E. DeVeaux

DECLARATION OF CHAD E. DEVEAUX IN SUPPORT OF SAN MATEO COUNTY'S FURTHER
ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED

# EXHIBIT 1

# HAND DELIVERED DOCUMENT



**OFFICE OF THE COUNTY ATTORNEY**
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

RECEIVED

MAR 1 7 2023

COUNTY COUNSEL
SAN MATEO COUNTY

(Received stamp)

Received from: Fresia Limin (CEO)
(Name/Agency)

Received by: Valerie Trigueros

Time: 3:05 PM



Cara Gagliano
Electronic Frontier Foundation
815 Eddy St.
San Francisco, CA 94109

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

RECEIVED
IN THE OFFICE OF

MAR 1 7 2023

CLERK OF THE
BOARD OF SUPERVISORS

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 3/9/2023
By /s/ Jennifer Torres
**Deputy Clerk**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Mateo Superior Court, Civil Division

CASE NUMBER:
*(Número del Caso):* 23-CIV-01075

400 County Center, Redwood City, CA 94063

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Cara Gagliano, Electronic Frontier Foundation, 815 Eddy Street, San Francisco, CA 94109, (415) 436-9333

| DATE: | 3/9/2023 | Neal I. Taniguchi | Clerk, by | /s/ Jennifer Torres | , Deputy |
|---|---|---|---|---|---|
| *(Fecha)* | | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.
Print this form    Save this form    Clear this form

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 308639 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Cara Gagliano | | |
| FIRM NAME: Electronic Frontier Foundation | | |
| STREET ADDRESS: 815 Eddy Street | | |
| CITY: San Francisco  STATE: CA  ZIP CODE: 94109 | | |
| TELEPHONE NO.: (415) 436-9333  FAX NO. : | | |
| E-MAIL ADDRESS: cara@eff.org | | |
| ATTORNEY FOR (Name): A.B.O. Comix, et al. | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center, 1st Floor
MAILING ADDRESS:
CITY AND ZIP CODE:    Redwood City, CA 94063
BRANCH NAME: Southern Branch of Superior Court

| Plaintiff/Petitioner: A.B.O. Comix, et al. | |
| Defendant/Respondent: County of San Mateo and Christina Corpus, in her official capac | |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 23-CIV-01075 |
|---|---|

TO *(insert name of party being served):* County of San Mateo

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 03/10/2023

Reed Canaan
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other *(specify):*

   Per Local Rule 3.804, Plaintiffs additionally serve: Notice of Assignment for All Purposes and Notice of Case Management Conference; Court's ADR information package, per CRC Rule 3.221; and a blank form of the Case Management Statement (CM-110).

*(To be completed by recipient):*

Date this form is signed: _____

▶

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 308639 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Cara Gagliano | | |
| FIRM NAME: Electronic Frontier Foundation | | |
| STREET ADDRESS: 815 Eddy Street | | |
| CITY: San Francisco    STATE: CA    ZIP CODE: 94109 | | |
| TELEPHONE NO.: (415) 436-9333    FAX NO. : | | |
| E-MAIL ADDRESS: cara@eff.org | | |
| ATTORNEY FOR (Name): A.B.O. Comix, et al. | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center, 1st Floor
MAILING ADDRESS:
CITY AND ZIP CODE:    Redwood City, CA 94063
BRANCH NAME: Southern Branch of Superior Court

Plaintiff/Petitioner: A.B.O. Comix, et al.

Defendant/Respondent: County of San Mateo and Christina Corpus, in her official capac

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 23-CIV-01075 |
|---|---|

TO (insert name of party being served): County of San Mateo

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:   03/10/2023

Reed Canaan
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ] A copy of the summons and of the complaint.
2. [ x ] Other *(specify):*

Per Local Rule 3.804, Plaintiffs additionally serve: Notice of Assignment for All Purposes and Notice of Case Management Conference; Court's ADR information package, per CRC Rule 3.221; and a blank form of the Case Management Statement (CM-110).

*(To be completed by recipient):*

Date this form is signed: _____

▶

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |

CARA GAGLIANO (SBN 308639)
AARON MACKEY (SBN 286647)
MUKUND RATHI (SBN 330622)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333
Email: cara@eff.org

STEPHANIE KRENT (*Pro Hac Vice* motion forthcoming)
ALEX ABDO (*Pro Hac Vice* motion forthcoming)
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
Tel.: (646) 745-8500
Email: stephanie.krent@knightcolumbia.org

MARIA DEL PILAR GONZALEZ MORALES (SBN 308550)
EMILY OLIVENCIA-AUDET (SBN 342116)
SHUBHRA SHIVPURI (SBN 295543)
SOCIAL JUSTICE LEGAL FOUNDATION
523 West 6th Street, Suite 450
Los Angeles, CA 90014
Tel.: (213) 973-4063
Email: pgonzalez@socialjusticelaw.org

*Attorneys for Plaintiffs*

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 3/9/2023
By____*/s/ Jennifer Torres*____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| A.B.O. Comix, Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, Kevin Prasad, Malti Prasad, and Wumi Oladipo, <br><br> Plaintiffs, <br><br> v. <br><br> County of San Mateo and Christina Corpus, in her official capacity as Sheriff of San Mateo County, <br><br> Defendants. | Case No.: 23-CIV-01075 <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATION OF ARTICLE 1, SECTIONS 2 AND 13 OF THE CALIFORNIA CONSTITUTION, THE FIRST AND FOURTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT** |

1

**INTRODUCTION**

1.     This case challenges San Mateo County's policy of digitizing and then destroying mail sent to people in its jails—depriving them of physical letters, drawings, pictures, and mementos—and of conducting suspicionless surveillance of that mail and the individuals who send it. In 2021, San Mateo County banned people in its jails from receiving any physical mail other than attorney communications. Under this new policy, the senders of mail must route their letters to Smart Communications, a private for-profit company based in Florida, where the company scans the mail, destroys it, and stores a digital copy for a minimum of seven years. Through this service, called MailGuard, people in jail may access digital copies of their mail only if they agree to MailGuard's terms of use, and only through shared tablets and kiosks that must be used in public spaces. Smart Communications stores the digital copies in a database that gives the County unfettered access to every piece of mail received.[1]

2.     San Mateo County's policy banning physical mail and subjecting digital copies to long-term surveillance violates the expressive, associational, privacy, and religious rights of the individuals in its jails, including those presumed innocent, and of the many individuals who send mail to those incarcerated people. Banning physical mail deprives incarcerated people and their communities of a uniquely expressive form of communication: Physical mail allows people to express themselves in ways that may feel too personal or sensitive for other modes of communication; it encourages deeper connection by giving correspondents the space to read and reflect before responding; and it evokes stronger and more lasting emotional meaning than digital correspondence. Under the County's policy, incarcerated people often struggle to access even digital copies of their mail. The policy also subjects both the senders and recipients of mail to increased and unwarranted surveillance by San Mateo County and others. At the same time, the policy serves no legitimate penological purpose but instead undermines the community and familial ties necessary for successful reentry.

---

[1] This complaint refers to both Defendants collectively as "San Mateo County" or "the County."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

3.     Plaintiffs Kenneth Roberts, Zachary Greenberg, Ruben Gonzalez-Magallanes, Domingo Aguilar, and Kevin Prasad are among the approximately 1,000 individuals incarcerated in San Mateo County for whom physical mail was once a lifeline, connecting them to loved ones, educators, and religious advisors. They held letters and drawings that their loved ones also held, and they frequently re-read mail in the privacy of their cells, when they awoke in the morning or before falling asleep. Many in the County's jails also relied on physical mail to take correspondence courses, because the physical copies allowed them to annotate readings, fill out worksheets, and send completed coursework back to their instructors.

4.     Now, they have difficulty accessing even digital copies of their mail. Those who agree to MailGuard's terms of use can access their mail only on shared tablets and kiosks, only in public spaces, and only during limited recreational time. They may have as little as thirty minutes of recreational time each day, during which they engage in other activities as well, including showering, exercising, and calling home. They cannot review correspondence in the privacy of their cells; they cannot spend any significant amount of time reading and reflecting on the letters they receive; and they cannot easily return to their correspondence. The tablets are also plagued by technical problems that can prevent them from reading their mail at all.

5.     Plaintiff A.B.O. Comix is one of the many organizations dedicated to supporting and sustaining incarcerated people. It is a collective of artists that works to amplify the voices of incarcerated LGBTQ people through artistic expression. A.B.O. Comix relies on mail to communicate with incarcerated people about their artistic projects, to circulate newsletters with interactive storytelling prompts, to connect people in prisons and jails with penpals, and to send holiday cards as signs of love and support. These efforts have been hampered by restrictive mail policies, including San Mateo County's policy of destroying and digitizing mail.

6.     Plaintiffs Malti Prasad and Wumi Oladipo have loved ones incarcerated in San Mateo County's jails. They have also been denied an important form of protected expression. They used to send handwritten letters, photographs, birthday cards, and religious and educational materials to their loved ones in jail. But the County put an end to this type of expression. Now, they must send any mail to Smart Communications, which will destroy the mail after scanning it into a

digital facsimile drained of much of its sentiment. Both Ms. Prasad and Ms. Oladipo have made the difficult decision to stop sending mail to their loved ones, and have been forced to rely on alternatives that are less personal, less private, less easily accessible, and more costly.

7.     The County's digitization and long-term storage of correspondence through MailGuard enables sophisticated and invasive surveillance of both incarcerated and nonincarcerated people. Every piece of mail sent through MailGuard goes into a database that is searchable through a dashboard Smart Communications maintains for San Mateo County. The County has given access to this dashboard to all law enforcement officers in San Mateo County's corrections division, to investigators in its sheriff's office and district attorney's Office, and to investigators in other municipalities in the County. These individuals can read and search mail through the dashboard without the need for individualized suspicion of wrongdoing, and without providing notice to either the sender or the recipient that their mail has been read or searched. On information and belief, County officials can specify keywords of their choosing and receive alerts any time a piece of mail contains one of those keywords. Finally, County officials can access the additional sensitive information that Smart Communications collects from individuals who send mail to the County's jails and sign up for its mail tracking service. This surveillance has predictably deterred many, including members of A.B.O. Comix, from writing as freely about sensitive topics, and has deterred others, including Ms. Oladipo and Ms. Prasad, from sending mail into the County's jails at all.

8.     While officials are entitled to some deference in administering jails and prisons, the Supreme Court has long emphasized that judicial review of speech-restrictive policies in these settings is not toothless. Here, San Mateo County's mail policy serves no legitimate penological purpose. Although the County's then–Sheriff, Carlos Bolanos, announced that the County's mail policy was meant to "prioritize . . . safety and security," the County has never explained why it initiated sweeping and long-lasting surveillance of both incarcerated and nonincarcerated people. And it has not justified its decision to ban mail over concerns about "fentanyl exposures." On information and belief, mail is not a significant source of fentanyl or other drugs in San Mateo County's jails.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

9.      Rather than further the County's goals, the mail policy undermines the County's penological interests in successful reentry. Numerous studies have confirmed that greater community and familial connection throughout incarceration, including through letter-writing, is associated with better post-incarceration adjustment. San Mateo County's mail policy, however, impedes expression and association during incarceration, threatening the important penological interests in, and sociological benefits of, correspondence by mail.

10.      Finally, the County's mail policy also violates the religious rights of many of the people in its jails. Religious and spiritual practices are central to the lives of many incarcerated people, including Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad. Mail was an important source of religious material, especially because of the difficulty of accessing religious guidance from jail services directly. Mail also allowed people to maintain individual spiritual practices by studying, meditating on, and sharing printed prayers, images, and religious instruction as they saw fit. The loss of physical religious correspondence has substantially burdened the religious practices of Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad.

11.      Plaintiffs now seek declaratory and injunctive relief from San Mateo County's mail policy. As described further below, San Mateo County's elimination of physical mail and use of MailGuard violates the First Amendment to the U.S. Constitution and Article I, Section 2 of the California Constitution by denying Plaintiffs and others the ability to use a uniquely expressive medium of communication and by chilling their expressive and associational activity. The policy also violates the Fourth Amendment to the U.S. Constitution and Article I, Section 13 of the California Constitution because it involves the search and seizure of correspondence and other information about the senders of mail for subsequent investigative use without any suspicion of wrongdoing, in a manner that is unreasonable at its inception and in its scope and duration. Finally, it also violates the Religious Land Use and Institutionalized Persons Act because it substantially burdens the ability of Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad to receive, study, and share religious materials and is not the least restrictive means of achieving any compelling interest of the County.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction under California Code of Civil Procedure §§ 525, 526a, and 1060.

13.     Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 393(b), 394(a), and 395(a) because Defendants are located in San Mateo County and their actions giving rise to Plaintiffs' claims occurred in San Mateo County.

**PARTIES**

14.     Plaintiff A.B.O. Comix is a collective of artists that works to amplify the voices of LGBTQ prisoners through artistic expression. It is based in Oakland, California. Its staff have sent mail to at least one individual incarcerated in San Mateo County's jails, and have paid California sales tax within the past year.

15.     Plaintiff Kenneth Roberts is currently incarcerated in San Mateo County at Maple Street Correctional Center, where he has been detained since September 2021. Mr. Roberts has paid sales tax on items in the jail's commissary within the past year.

16.     Plaintiff Zachary Greenberg is currently incarcerated at Maple Street Correctional Center, where he has been detained since January 2021. Mr. Greenberg was previously incarcerated at Maguire Correctional Facility, also in San Mateo County, from December 2020 to January 2021. Mr. Greenberg has paid sales tax on items in the jail's commissary within the past year.

17.     Plaintiff Ruben Gonzalez-Magallanes is currently incarcerated at Maple Street Correctional Center, where he has been detained since August 2022. Mr. Gonzalez-Magallanes has paid sales tax on items in the jail's commissary within the past year.

18.     Plaintiff Domingo Aguilar is currently incarcerated at Maguire Correctional Facility, where he has been detained since June 2022. Mr. Aguilar was previously incarcerated at Maple Street Correctional Center from August 2019 to June 2022. Mr. Aguilar has paid sales tax on items in the jail's commissary within the past year.

19.     Plaintiff Kevin Prasad is currently incarcerated at Maple Street Correctional Center, where he has been detained since April 2018. Mr. Prasad has paid sales tax on items in the jail's commissary within the past year.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20.     Plaintiff Malti Prasad is the mother of Kevin Prasad. She lives in Sacramento County. She regularly shops in San Mateo County and has paid local sales tax in San Mateo County within the past year.

21.     Plaintiff Wumi Oladipo is the significant other of Zachary Greenberg. She lives in Alameda County. She works in San Mateo County and has paid local sales tax in San Mateo County within the past year.

22.     Defendant San Mateo County is a local government entity organized under the laws of the State of California. The San Mateo County Sheriff's Office is a division of San Mateo County. At the request of the sheriff's office, San Mateo County contracted with Smart Communications to destroy and digitize incoming non-legal mail through MailGuard.

23.     Defendant Christina Corpus is the sheriff of San Mateo County. She is responsible for overseeing the sheriff's office and maintains responsibility for the policies and rules governing the County's correctional facilities, including the mail policy challenged here. She is sued in her official capacity only.

<div align="center">

**FACTS**

***Smart Communications and MailGuard***

</div>

24.     Smart Communications is a Florida-based company founded in 2009 that markets its services to prisons and jails around the country, emphasizing its ability to help law enforcement monitor phone calls, video visits, and electronic and physical correspondence.

25.     This case concerns Smart Communications' MailGuard service, which prisons and jails use to eliminate physical mail behind bars. When a prison or jail implements MailGuard, it redirects physical mail to a facility in Florida run by Smart Communications. There, Smart Communications will open, scan, and upload digital copies of the mail into a proprietary database accessible to corrections and law enforcement officers through a searchable dashboard. Smart Communications will then destroy the physical mail. Utilizing the dashboard, corrections officers can review mail and either approve or reject it. If approved, a digital copy of the mail may be accessed by its recipient, typically via tablets or kiosks provided by Smart Communications.

<div align="center">

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

</div>

26. Many prisons and jails have historically subjected incoming physical mail to an initial review before delivery to its recipient. The use of MailGuard, however, departs from this practice in two important ways.

27. First, MailGuard involves the elimination of physical mail. Some facilities, including those in San Mateo County, exempt privileged legal mail, but all other physical mail is simply forbidden. As discussed below, the MailGuard service replaces physical mail with scans that must be read on small tablets or kiosks that are in high demand and located in public spaces.

28. Second, the use of MailGuard subjects incoming mail and those who send it to surveillance that is unprecedented in its scope and duration:

    a. Smart Communications stores the mail sent through MailGuard for a minimum of seven years, subjecting both the senders and recipients of mail to long-term surveillance. In its contract with San Mateo County, for example, Smart Communications agreed that it would store all digitized mail for seven years "from the date of the inmate's release from the County Facility." In late 2018, Jon Logan, the founder and CEO of Smart Communications, told a reporter for *Mother Jones* that, in its first ten years of business, Smart Communications had never deleted any records or any data from its database, adding that Smart Communications has "hundreds of millions of data records stored for investigators at anytime."

    b. Smart Communications keeps the mail it scans in a searchable database. On information and belief, Smart Communications allows law enforcement officers to run unlimited keyword searches on the entire corpus of digitized mail or to set keyword flags that will notify officers whenever a selected keyword is used in a new piece of incoming mail. Because MailGuard is used on incoming mail, this surveillance implicates not only the incarcerated recipients of mail, but also the family members, friends, religious advisors, and others who send them mail.

    c. Finally, on information and belief, this surveillance encompasses not just mail but a great deal of other information as well. MailGuard gives prison and jail officials access to sensitive and previously unavailable information about at least some

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

senders of mail, including their phone numbers, physical addresses, IP addresses, email addresses, credit card and banking information, and GPS locations. Smart Communications collects this information through a service that allows the senders of mail to "track postal mail delivery," but which Smart Communications has advertised to prisons and jails as collecting "significant new intelligence into the public sender of the postal mail, giving postal mail a digital fingerprint."

29.     It is no surprise, then, that Smart Communications markets MailGuard as "an invaluable investigative/intelligence gathering tool" that provides a "massive increase in investigative intelligence gained on both inmate and public users." The very purpose of the service is to give law enforcement officers, like those in San Mateo County, the ability to obtain and examine unprecedented intelligence about incarcerated and nonincarcerated correspondents alike.

### San Mateo County's adoption of MailGuard

30.     Prior to April 2021, anyone wishing to communicate with people incarcerated in San Mateo County's jails could send mail directly to the facility. Corrections officers would inspect the mail for the presence of drugs or other threats to facility security, often with the assistance of trained drug-sniffing dogs and TruNarc, a Raman spectroscopy device that scans mail and packages for the presence of narcotics. Once mail was approved, it was delivered directly to its recipient, who could read (or re-read) the mail at any time and keep it with other personal belongings in their cell.

31.     In 2021, with no opportunity for public comment or feedback, San Mateo County abruptly decided to eliminate physical mail within its facilities. On April 6, 2021, the sheriff's office issued a press release stating that, later that month, it would begin destroying and digitizing incoming mail using Smart Communications' services. After that announcement, the sheriff's office informed its corrections officers of the upcoming change and issued a request for proposals relating to mail destruction and digitization services. In May 2021, *after* MailGuard had already been in place for over a month at both Maguire Correctional Facility and Maple Street Correctional Center, San Mateo County announced that it would award the contract to Smart Communications.

32.     San Mateo County formally entered into an agreement with Smart Communications on September 1, 2021. Pursuant to that agreement, the County agreed to adopt MailGuard and to make digitized mail accessible only on communal tablets and kiosks provided by Smart Communications, which the company contracted to provide at a ratio of one tablet for every three people incarcerated in San Mateo County's facilities. The agreement does not require Smart Communications to treat the mail it receives confidentially; it does not limit Smart Communications' ability to access or disseminate the information it collects; it does not require Smart Communications to institute specific security practices to minimize the risk of data breaches; it does not prohibit Smart Communications from collecting and monetizing information about the senders and recipients of mail; it does not require Smart Communications to scan mail within a particular time period; and it does not require Smart Communications to scan mail accurately or legibly.

33.     Although the agreement purports to exclude religious mail, in practice the County subjects incoming religious correspondence to the mail policy, requiring it to be sent to Florida where it is digitized and then destroyed.

### *San Mateo County's use of MailGuard*

### **The expressive harms of eliminating physical mail**

34.     Physical correspondence is a uniquely important and expressive medium of communication for incarcerated people and those who wish to communicate with them.

35.     Being able to receive physical mail is crucial to individuals behind bars. It offers a kind of intimacy and emotional connection that other forms of communication cannot, by allowing a recipient to hold onto the object of the sender's expression, the very object that they recently held—whether a handwritten letter carefully penned and then folded, or a meticulously drawn picture from a child or young relative, or a photograph with a personal inscription on the back, or a memento chosen to convey what words might fail to express. Physical mail also gives recipients time to read and to reflect in the relative solitude of their jail cells, and to respond when ready with the original letter in front of them. It has a permanence that digital copies lack; many behind bars retain and regularly revisit important letters to remind them of their connections to the outside world

and to make it through particularly stressful moments. Tangible correspondence helps to build and sustain the bridges that those behind bars often lean on for resilience, with their loved ones and with their religious advisors and communities.

36.     Physical mail is also necessary for incarcerated individuals to meaningfully participate in religious, educational, occupational, or community-based learning. Many in jail turn to outside clergy members for spiritual guidance, to correspondence courses for educational and occupational training, and to community organizations for personal growth and emotional support. These opportunities often involve writings and images best absorbed in physical form, so that recipients can underline, take notes on, contemplate, and easily return to the material. Access to educational material and community correspondence is especially important for those incarcerated in San Mateo County, where in-person educational opportunities are very limited. Educational services and programming were recently suspended for several months at Maple Street Correctional Center, and Maguire Correctional Facility simply does not offer any educational services or programming.

37.     For similar reasons, being able to *send* physical mail is important for those who are not incarcerated. And it is especially important to those who are unable to visit their loved ones behind bars, whether because they live far away, are too frail to travel, or are younger than 18 and therefore not permitted to visit their loved ones incarcerated in San Mateo County.

38.     San Mateo County has shut down this uniquely important and expressive medium of communication and replaced it with scanned mail, but scanned mail is no substitute. Scanned mail does not carry the same expressive and emotional resonance as physical mail. Social science research confirms this: Physical objects generally evoke stronger emotional responses than their digital counterparts. Objects, especially those linked to loved ones, more easily become infused with emotion, allowing recipients to derive comfort and other meaning from them. One study found that while physical objects evoke feelings of awe, wonderment, and fascination, high-quality digital scans of those objects do not. Even consumer research studies have shown that physical goods, in contrast to digital ones, are associated with greater permanence, emotional connection, and value.

39.     The specific manner in which San Mateo County has implemented mail digitization has undermined still further the ability of those in the County's jails to express themselves and to associate with others through the mail.

    a.  First, San Mateo County does not allow incarcerated people to access mail except through tablets or kiosks. The County does not print copies of scanned mail for incarcerated people, and it does not provide printers to allow incarcerated people to print their mail directly.

    b.  Second, the County does not provide those incarcerated with adequate time to read and respond to scanned mail. Tablets can be accessed only during limited recreational time, sometimes for no more than thirty minutes per day, and those incarcerated must also use this limited time for showering, exercising, making phone calls, and other activities. There are typically only ten tablets and four kiosks in a recreational area, although the space may be used by over 50 people at once. Because tablets are also used for other activities, including streaming videos, managing commissary balances, and doing legal research, not everyone who needs to use a tablet during recreational time can access one.

    c.  Third, private reading and reflection on the tablets is all but impossible. The tablets are available only in shared recreational areas, forcing everyone to read their mail in public spaces.

    d.  Fourth, the tablets themselves are plagued by technical problems. They frequently freeze, break, or lose their charge.

    e.  Fifth, the tablets have small screens, making it difficult to read scanned mail. At seven inches across, the screens are only slightly larger than a standard smartphone, and the tablets do not allow users to enlarge or zoom in on text or images.

As a result, people incarcerated in San Mateo County experience significant difficulties in attempting to access and read their scanned mail.

40.     Nor are other forms of communication a substitute for the loss of physical mail. Phone calls, for example, are more expensive than mail and are beset by technical difficulties that result in calls being dropped or that leave participants with fewer than fifteen minutes to speak. Phones are in shared spaces, often immediately adjacent to one another, leaving incarcerated people like Mr. Roberts, Mr. Greenberg, Mr. Gonzalez-Magallanes, and Mr. Prasad without a private space

to speak. Video visitation and email messaging, which can be costly, are conducted through the same tablets and kiosks provided by Smart Communications, and therefore individuals face the same difficulties using them reliably and privately. Video visitation is particularly difficult to use because calls often drop due to poor internet connectivity, and the facial-recognition feature that isolates each user's face can cause the calls to freeze or drop if either user moves their face, tilts their head at an unfamiliar angle, or even sneezes. On information and belief, the facial-recognition feature malfunctions with greater frequency for individuals of color, including Ms. Oladipo. On information and belief, all of these methods of communication are also recorded and retained for years. Finally, in-person visits are permitted at Maple Street Correctional Center only for people enrolled in jail programming; the availability of programming is limited, and many people have gaps between participating in programs. Most who qualify for in-person visits are permitted only one visit every 15 days. Maguire Correctional Facility allows more frequent visits, but at both facilities San Mateo County has significantly shortened visitation hours since 2019 and does not allow visitation from minors. These alternative channels of communication are logistically challenging, expensive, and afford minimal privacy. And of course, none resembles or replaces the intimacy and reliability that physical mail provides.

41.     San Mateo County's elimination of physical mail has been devastating to the ability of those in jail and their loved ones to communicate with one another. As explained further below, all Plaintiffs have experienced the expressive harms associated with mail digitization.

## The surveillance of mail under the County's mail policy

42.     San Mateo County's mail policy subjects both senders and recipients of mail to long-term and suspicionless surveillance, including for reasons unrelated to the safety of the County's jails.

43.     First, through MailGuard, San Mateo County has centralized and long-term access to an extraordinary new breadth of information about incoming mail and those who send it. Through a program provided by Smart Communications, called the SmartEcosystem Dashboard, San Mateo County officials can access digital copies of each piece of incoming non-legal mail received since MailGuard was adopted in 2021. The dashboard also provides access to information collected about

13

the senders of mail, including, on information and belief, information gathered through its mail

tracking service. Below is a screenshot used in Smart Communications' past marketing showing

the dashboard's section on the public senders of mail. On information and belief, the version of the

dashboard used by San Mateo County today is similar.[2]



44.     Second, San Mateo County permits law enforcement officers from across the

jurisdiction—including investigators in the sheriff's office, the district attorney's office, and in

other municipalities—to search this information at any time, for any reason or no reason at all. San

Mateo County does not, for example, require law enforcement officers to seek any sort of internal

---

[2] Smart Communications did not redact inmate names and IDs from this screenshot, which was
featured in a marketing proposal it submitted to the Virginia Department of Corrections in 2018.
An unredacted copy of the proposal was disclosed and then made public in response to a Virginia
Freedom of Information Act request. To preserve the privacy of the correspondents, Plaintiffs
here have included the redacted version of the screenshot used in an article describing the
proposal. *See* Aaron Gordon, *Prison Mail Surveillance Keeps Tabs on Those on the Outside, Too*,
Vice (Mar. 24, 2021), https://www.vice.com/en/article/wx8ven/prison-mail-surveillance-
company-keeps-tabs-on-those-on-the-outside-too.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

approval or articulate any individualized suspicion of wrongdoing before conducting searches in the SmartEcosystem Dashboard. The County's Corrections Manual instructs corrections officers in particular to "read [correspondence] as frequently as deemed necessary to maintain security or monitor a particular problem." On information and belief, County officials have used their authority to search through the dashboard freely.

45.     Third, San Mateo County's adoption of MailGuard also exposes this private information to Smart Communications, which, on information and belief, is free to use the information however it pleases. San Mateo County's contract with Smart Communications places no limit on how the company can utilize the information it gathers from physical mail or by tracking the public senders of it. For example, on information and belief, Smart Communications has previously advertised MailGuard by using screenshots of an individual's actual mail, without regard for their privacy. In 2018, Smart Communications included the following screenshot of what appears to be a private letter—without the redaction seen here—in a proposal it made to the Virginia Department of Corrections.[3]



---

[3] As described in note 2, *supra*, the version provided to the Virginia Department of Corrections redacted neither the name of the sender nor of the recipient.

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

46.     San Mateo County and Smart Communications have not provided either the senders or recipients of mail with notice describing how they now store and search mail. Many family members and senders of mail only learned about the adoption of MailGuard from their loved ones, and otherwise had no way to know that sending a letter to someone incarcerated in San Mateo County would result in extensive, long-lasting surveillance. When mail is sent directly to a San Mateo County jail, the County either forwards the mail to Smart Communications or returns the mail with instructions to send it to Florida, but does not inform the sender that doing so will subject them to long-term surveillance by law enforcement officers and a private contractor. The mailing instructions page on the County sheriff's office website instructs people to send mail to Smart Communications' Florida mailing address, but it does not provide any information about its destruction of mail and surveillance of the digital copies. A notice buried elsewhere on its website, and, on information and belief, posted in the lobbies and some common areas of the jails, describes a "new jail mail procedure" but fails to explain that the digital copies of mail are accessible to both San Mateo County and Smart Communications for at least seven years after the recipient has been released from incarceration. On information and belief, the notice provided to incarcerated recipients through Smart Communications tablets similarly omits this crucial information.

47.     This unprecedented invasion of privacy in San Mateo County's jails has predictably chilled the use of mail, as similar mail digitization efforts have in other locations. For example, when Tuolumne County, California implemented MailGuard, it recorded a decrease in mail sent to people incarcerated in its jails—a fact Smart Communications used to advertise MailGuard to San Mateo County. And in response to Pennsylvania's adoption of MailGuard in 2018, multiple family members explained to reporters that they subsequently stopped or altered their use of mail to communicate with their loved ones in custody. As discussed further below, all Plaintiffs have experienced this chilling effect and reduced or stopped their use of mail to communicate in the wake of San Mateo County's adoption of MailGuard.

<div style="text-align:center"><strong>The lack of penological justification for the County's mail policy</strong></div>

48.     San Mateo County has never adequately explained its decision to adopt this mail policy, nor is there a legitimate government interest in retaining it. In the County's initial press

<div style="text-align:center">16</div>

release announcing the adoption of MailGuard, the County said only that it would "mak[e] some changes to the way people receive mail" to "prioritize the safety and security of those in our correctional facilities." And in response to criticism of the decision on Facebook, the sheriff's office asserted that "our changes are to help keep everyone safe since there has been some concerns regarding fentanyl exposures with the old mail system we were using." But the County has said virtually nothing else to explain the decision.

49.     San Mateo County has never publicly suggested that fentanyl was a significant problem within its facilities, that the presence of fentanyl was significantly increasing, or that any data pointed to mail as a significant source of fentanyl. Indeed, although the sheriff's office has not provided information on fentanyl-related drug incidents, an outside study of fentanyl overdoses around the United States revealed that, between 2013 and March 30, 2021, there were no publicly reported fentanyl-related overdoses in either of the County's jails.

50.     Nor is there evidence that mail is a significant source of fentanyl or other drugs in San Mateo County's jails. Court records, federal investigations, and public statements instead show that the primary channel through which drugs are introduced into jails and prisons is *staff*. For example, the executive director of the Missouri Corrections Officers Association admitted in 2022 that staff were the main source of drugs in Missouri's jails. Also in 2022, a New York City Department of Corrections investigator testified in federal court that drugs and other contraband can "usually" be traced to jail staff and officers. Finally, in a 2019 report on conditions in the Alabama prison system, the U.S. Department of Justice described interviews with multiple officials who confirmed that staff smuggling was the primary source of drugs, and it recommended screening all staff for drugs in the future. In San Mateo County itself, staff smuggling also appears to be a problem; multiple jail employees have pleaded no contest to charges that they smuggled drugs into its jails.

51.     In contrast, mail-related drug trafficking appears rare. In Florida state prisons, for example, less than 2% of the contraband items confiscated over a two-year period were traced back to mail, and only 0.35% of mail contained contraband. In Texas, the rate of mail with suspicious or

"uninspectable" substances—which would include drugs as well as stickers or fragrances—was only 0.5% in 2019.

52.     There is also little evidence that mail digitization reduces the prevalence of drug use or drug overdoses in jails or prisons. Following statewide adoption of MailGuard in Pennsylvania, the drug test positivity rate actually increased. Similarly, after Missouri contracted with a different company to digitize and destroy incoming mail, the number of average overdoses in the state's jails and prisons increased from thirty-one to thirty-seven per month. And in New Mexico, after prisons banned physical mail, the drug test positivity rate nearly doubled.

53.     Any claims that San Mateo County may make to justify the elimination of physical mail because of health effects on staff who handle drug-laced mail would be similarly unsupported. There is no evidence that drug-laced mail poses a serious threat to prison staff who inspect it. As the *New York Times* and others have reported, scientific literature has shown definitively that brief contact with fentanyl—even without gloves or other common protective clothing—is insufficient to cause a high, let alone an overdose. And in any event, the digitization of mail does not actually eliminate the need to handle the mail; it simply shifts the responsibility for doing so to others working at the behest of the County.

54.     Nor has the County attempted to explain why other, less speech-restrictive and more privacy-protective tools that could limit drug use in its facilities are insufficient. For example, the County has previously used drug-sniffing dogs and Raman spectroscopy devices to scan mail for the presence of drugs. And there are means of limiting drug use that extend beyond mail: Examples from other correctional facilities indicate the adoption of better drug treatment programs and staff security measures can reduce drug overdoses and drug test positivity rates.

55.     Rather than serve San Mateo County's penological interests, the County's mail policy harms them. Correspondence plays a crucial role in strengthening community and family connections, improving post-release outcomes, and promoting better mental health. Regular communication—including through mail—strengthens an incarcerated person's community ties, which predict better adjustment following incarceration. In the words of criminologist Joan Petersilia, "*every* known study that has been able to directly examine the relationship between a

prisoner's legitimate community ties and recidivism has found that feelings of being welcome at home and the strength of interpersonal ties outside prison help predict postprison adjustment." For instance, studies have found that more frequent family contact, including through letters, is associated with greater feelings of connectedness; stronger parent-child relationships; improved mental health for incarcerated people; reduced depression and anxiety for children of incarcerated parents; and a higher likelihood of housing stability, income self-sufficiency, and educational or vocational advancement. Recognizing the importance of this communication, both the California Department of Corrections and Rehabilitation and the federal Bureau of Prisons explicitly encourage correspondence during incarceration.

56. Physical letters are particularly important during incarceration. Studies confirm that letter-writing creates space for communication in which both senders and recipients have time for reflection. Some studies of incarcerated parents suggest that parents opt for writing letters over other forms of contact for this reason. And as discussed above, other studies have emphasized that physical objects are associated with permanence and emotional attachment. The County's mail policy deprives people of these benefits of letter-writing. The limited, public access incarcerated people have to their scanned mail does not provide the contemplative space or privacy necessary to foster their relationships, and the scanned mail itself does not carry the same emotional resonance as the original physical copy. As a result, the County's policy impedes incarcerated people and nonincarcerated letter-writers from maintaining these vital ties.

### The Plaintiffs

57. Plaintiffs in this case are people and organizations who have been injured by San Mateo County's mail policy. They have been deprived of the opportunity to communicate with their loved ones and communities through physical mail, either because they are incarcerated in one of the County's jails or because they have a relationship with someone who is. They have been deterred by the knowledge that San Mateo County and Smart Communications are collecting and storing digitized copies of their correspondence, and many Plaintiffs have responded by refusing to send mail into the County's jails or by asking their loved ones not to do so. They have struggled to maintain personal, religious, and community-based connections, because there are no other forms

of communication that substitute for physical mail. As described further below, their privacy, their relationships, and their expression have all been compromised by the County's use of MailGuard.

### A.B.O. Comix

58.     Plaintiff A.B.O. Comix is a collective of artists that works to amplify the voices of incarcerated LGBTQ people through artistic expression. It collaborates closely with incarcerated artists to promote mutual support and to keep incarcerated members connected to the outside community. It has nearly 450 incarcerated members, including at least one member incarcerated in Maple Street Correctional Center with whom A.B.O. Comix's staff has corresponded in the last year.

59.     Correspondence with incarcerated people is at the core of A.B.O. Comix's mission. The collective relies on mail to communicate with incarcerated people about their artistic projects, to circulate newsletters with interactive storytelling prompts, to connect people in prisons and jails with penpals, and to send holiday cards as signs of love and support.

60.     Mail digitization and destruction policies, including San Mateo County's, have undermined A.B.O. Comix's expression and association with its incarcerated members. Many of the materials the collective wishes to send to its incarcerated members simply cannot be replicated via scanned mail. For example, its quarterly newsletter includes storytelling prompts meant to help incarcerated members think creatively and grow as artists and writers. The prohibition on physical mail makes it impossible for newsletter recipients to fill out or annotate these prompts directly, and because San Mateo County allows only limited access to tablets, creating art using the storytelling prompts is impractical for people in the County's jails. Many of the collective's nonincarcerated members also create intricate, hand-crafted messages and hand-drawn pictures for their incarcerated penpals, and they do not believe that scanned copies can ever substitute for these messages. The destruction of their original letters is demoralizing for A.B.O Comix's staff and nonincarcerated members.

61.     Mail digitization and destruction policies, including San Mateo County's, have also deterred members of the collective from expressing themselves as openly. A.B.O. Comix's staff and nonincarcerated members now hesitate to write as freely, especially about political or LGBTQ

1    issues. While A.B.O. Comix is a collective aimed at supporting incarcerated members of the

2    LGBTQ community, not all of its members may identify as queer within jailhouse walls. Knowing

3    their letters will be read in public spaces and retained for years by jail officials and private

4    companies, nonincarcerated members now write less freely about LGBTQ issues out of fear for

5    retaliation against incarcerated penpals.

6                                              **Kenneth Roberts**

7         62.    Plaintiff Kenneth Roberts has been incarcerated at Maple Street Correctional Center

8    since September 2021. Mr. Roberts is one of 24 people currently enrolled in the CHOICES

9    Program, an application-only substance use intervention program that has a waiting list of

10   approximately 200 people. Mr. Roberts is also a devoted father and the son of loving parents. He

11   spends a significant amount of his time counseling and supporting others incarcerated in the jail,

12   and has even become a de facto barber for some of the men incarcerated with him.

13        63.    Although Mr. Roberts feels compelled to use MailGuard to keep in touch with his

14   family, the invasiveness of the County's mail policy has inhibited his expression and association

15   with others. He is acutely aware that his mail can be read at any time, for any purpose, over many

16   years by San Mateo County or by Smart Communications. He also knows that other people in his

17   pod can see his mail when he views it on a tablet in the recreational room. He receives far less mail

18   now than he did during previous periods of incarceration at facilities that did not rely on MailGuard,

19   in part because his family members want to avoid the long-term retention of their intimate

20   communications.

21        64.    San Mateo County's prohibition on physical mail substantially restricts Mr.

22   Roberts's ability to communicate. In his view, scanning mail destroys its sentiment. He is especially

23   distressed that he can no longer hold the drawings his four-year-old daughter still occasionally

24   creates for him, that he cannot trace her designs and feel the texture of her colored pencil on the

25   paper, and that her original artwork is being destroyed by Smart Communications. Equally upset

26   by the destruction of her artwork, Mr. Roberts's daughter's mother has stopped encouraging her to

27   make and send him picutres. Mr. Roberts also finds it difficult to read and respond thoughtfully to

28

scanned letters, because of his limited access to tablets and his inability to underline and revisit portions of letters he wants to respond to.

65.     Mr. Roberts would also like to use mail to further his education, but the County's mail ban has prevented him from doing so. He has looked into opportunities to earn college credit and to continue working towards his certification as a substance use counselor through correspondence courses, but he has concluded that it would be impossible to take advantage of these opportunities without being able to fill out physical coursework and without having sufficient tablet access to ensure that he could complete readings and take notes.

### Zachary Greenberg

66.     Plaintiff Zachary Greenberg has been incarcerated at Maple Street Correctional Center since January 2021. He was previously incarcerated at Maguire Correctional Facility from December 2020 to January 2021. Mr. Greenberg is a devoted partner to his significant other Wumi Oladipo and remains close to his parents and other family members. He also practices Judaism and has found connecting to his religion especially important to enduring the challenges and isolation of incarceration.

67.     The invasiveness of MailGuard has inhibited Mr. Greenberg's expression and association with others. He initially received mail through MailGuard, but the surveillance made possible by Smart Communications led Mr. Greenberg to limit his communication by mail. Eventually, he told his family and friends not to mail him at all. He also filed formal grievances protesting the mail policy as unconstitutional and stating that he withdrew his consent to MailGuard's terms of use. However, the policy of the sheriff's office is not to accept grievances "if they are challenging the rules and policies themselves," and he has not received any acknowledgment of or response to these grievances. Mr. Greenberg also attempted to withdraw his consent on the tablets provided by Smart Communications but could not find any option to do so. Mr. Greenberg has confirmed that his express withdrawal of consent was not honored: mail sent to him by post-release programs is still being scanned and uploaded to MailGuard. Because receiving this mail is critical to preparing for probation hearings and securing reentry assistance, he feels he has no choice but to continue checking his MailGuard account.

68.     San Mateo County's prohibition on physical mail substantially restricts Mr. Greenberg's ability to communicate. Before the current mail policy was enacted, he received letters from Ms. Oladipo regularly. He cherishes those letters and has saved them to re-read; he finds them especially helpful at times when he is struggling emotionally. Since April 2021, Mr. Greenberg has not been able to receive physical mail from any loved ones, and he now no longer receives even scanned mail from them. The loss of this crucial medium of communication has caused him significant distress, especially because no other form of communication available to him can provide the intimacy, privacy, and reliability of physical mail.

69.     San Mateo County's mail policy also interferes with Mr. Greenberg's ability to correspond with and secure acceptance to post-release reentry programs. Many of these programs will communicate only by mail, and the correspondence is often time-sensitive. Mr. Greenberg has found it nearly impossible to correspond with reentry programs in a timely manner through MailGuard, sometimes not receiving their mail until more than a month after it was sent.

70.     The elimination of physical mail has substantially burdened Mr. Greenberg's practice of his religion as well. Mr. Greenberg would like to correspond with a rabbi because he has been told that no rabbis are available for in-person religious meetings at the jail. Mr. Greenberg considered mail as an alternative way of connecting with and receiving guidance from clergy leaders of his faith, but because he objects to the scanning, surveillance, and retention of his personal religious correspondence, that option is not available to him.

**Ruben Gonzalez-Magallanes**

71.     Plaintiff Ruben Gonzalez-Magallanes has been incarcerated at Maple Street Correctional Center since August 2022. He has been a devout adherent of Maliki Sunni Islam for eight years.

72.     Although Mr. Gonzalez-Magallanes felt compelled to consent to MailGuard's terms of use so that he could receive his mail, the invasiveness of MailGuard has inhibited his expression and association with others. Though he was previously incarcerated in a facility that photocopied physical mail, he has never before had his mail subjected to long-term retention and surveillance.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Knowing that letters addressed to him are accessible to both the County and a private company, he

2   now communicates much less frequently with his mother and his imam.

3       73.     The County's prohibition on physical mail substantially restricts Mr. Gonzalez-

4   Magallanes's ability to communicate. He especially cherished the ability to smell the scent of his

5   mother's perfume on the physical letters she used to send him. He does not believe scanned mail is

6   a substitute for the original letters and cards he once received.

7       74.     The County's mail policy has also substantially burdened Mr. Gonzalez-

8   Magallanes's religious practice. He once relied on written materials, like letters or pamphlets, to

9   study the teachings of Islam and maintain his religious practice. During prior periods of

10  incarceration, he could meet with imams in person and attend group worship. Because these options

11  are not available in San Mateo County, physical texts and teachings are even more central to his

12  ability to practice Islam. He also relied on written materials to share his beliefs with other people

13  in Maple Street Correctional Center. His faith teaches that he may not withhold knowledge from

14  those who seek to learn, but that it is a sin to misconstrue the teachings of Islam. He believes that

15  putting his imam's teachings into his own words would violate this precept. The County's ban on

16  physical mail has meant that Mr. Gonzalez-Magallanes can no longer fulfill his mandate to study

17  and share knowledge of Islam.

18                          **Domingo Aguilar**

19      75.     Plaintiff Domingo Aguilar is in civil detention at Maguire Correctional Facility,

20  where he has been since approximately June 2022. Before that, he was incarcerated at Maple Street

21  Correctional Center from August 2019 to June 2022. Mr. Aguilar is a loving son whose elderly

22  mother lives in Arizona near the U.S.-Mexico border.

23      76.     The invasiveness of MailGuard has inhibited Mr. Aguilar's expression and

24  association with others. As soon as San Mateo County adopted the mail policy, he became

25  concerned about his privacy and the privacy of his loved ones. He refused to consent to receive

26  mail through MailGuard and immediately advised his family to stop sending him mail.

27      77.     The loss of physical mail has affected Mr. Aguilar deeply. Prior to the new policy,

28  he relied on mail to stay in touch with his mother, who is elderly and lives far from San Mateo. He

1  still keeps several pieces of mail he received before the adoption of MailGuard, including a letter

2  from his father and birthday cards, and re-reads them again and again, often doing so at night to

3  comfort himself and reduce stress. The loss of physical mail deprives Mr. Aguilar of this singular

4  comfort, and he is especially distraught that his mother cannot mail him physical photos of his

5  granddaughter, who was born in June 2022. Mr. Aguilar does not believe that other methods of

6  communication can ever substitute for the connection and expression he achieved through physical

7  correspondence.

<center>**Kevin Prasad**</center>

8

9      78.     Plaintiff Kevin Prasad has been incarcerated at Maple Street Correctional Center

10  since April 2018. Mr. Prasad spends his time practicing the Hindu religion; connecting with his

11  mother, sister, father, and uncle; and helping other incarcerated individuals advocate for themselves

12  and conduct legal research.

13      79.     The invasiveness of MailGuard has inhibited Mr. Prasad's expression and

14  association with others. Knowing that he must now access mail in public spaces and that mail will

15  be subject to long-term surveillance by San Mateo County and Smart Communications, he has

16  instructed his family members to stop sending him mail. He has received only two pieces of mail

17  through MailGuard. Those items were already available in Mr. Prasad's MailGuard account when

18  he first signed on and accepted its terms of use—indicating that the mail had been scanned and

19  uploaded before Smart Communications had his consent to do so. Mr. Prasad subsequently wrote

20  to Smart Communications and stated that he withdrew his consent to the MailGuard terms of use,

21  but he did not receive a response.

22      80.     Mr. Prasad believes that San Mateo County's prohibition on physical mail

23  substantially restricts his ability to communicate. He misses receiving multiple letters per month

24  from his family members. He views physical mail as uniquely expressive and deeply values the

25  physical letters he has from before the mail ban. He is especially disturbed that, under the policy,

26  he is no longer able to touch the letters his family members touched and smell the familiar scents

27  that lingered on mail sent by his mother and uncle. The loss of mail is particularly challenging

28  because he lacks meaningful alternatives; for example, his older relatives struggle with video

<center>25</center>
<center>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</center>

visitation, and his parents live over two hours away from the jail, making in-person visitation difficult.

81. The mail policy has also substantially burdened Mr. Prasad's religious practice. Mr. Prasad comes from a religious family that practices a form of Hinduism unique to his ancestral home in Fiji. Mr. Prasad relies on written prayers, religious texts, and images of deities to practice his religion. In accordance with his religious practices, he uses religious imagery to focus his attention during meditation and prayer. Since the County banned physical mail, however, he cannot receive these materials from his family members through the mail. Mr. Prasad's belongings, including religious materials he received before the adoption of MailGuard, were lost while he was temporarily hospitalized in November 2022, depriving him of those materials. Mr. Prasad tried requesting images of Hindu deities from the Service League of San Mateo County, a non-profit agency that provides services for those incarcerated in the County's jails, but Service League is not permitted to provide printed materials that include images. These materials are central to his religious practice, and the loss of mail as a reliable source of religious instruction has hampered Mr. Prasad's ability to worship in the tradition in which he was raised.

<div align="center"><strong>Malti Prasad</strong></div>

82. Plaintiff Malti Prasad is the mother of Kevin Prasad. She works full-time at the California Department of Motor Vehicles. She is also a religious woman, who regularly prays and celebrates Hindu holidays.

83. The invasiveness of MailGuard has inhibited Ms. Prasad's expression and association with others. Prior to the adoption of MailGuard, Ms. Prasad's letters to her son were reviewed briefly by corrections officers when they arrived at the jail, but the surveillance enabled by MailGuard involves long-term storage of her letters. Ms. Prasad's letters to her son were often quite personal, and she feels that allowing her mail to be scanned and stored by Smart Communications and San Mateo County would be akin to allowing someone to make a copy of and read her diary. Despite the personal cost, she decided to stop communicating with her son by mail.

84. Exchanging letters with her son was a vital form of communication for Ms. Prasad, which she has now lost. She commonly sent him written prayers, discussed her thoughts and

<div align="center">26</div>

feelings, and used the letters to teach him her native language, Fiji Hindi. These letters helped her to maintain a deep expressive and emotional connection with her son. The inability to send her son letters has deeply distressed Ms. Prasad. Although Ms. Prasad drives four hours every Sunday to see her son, sometimes only through a video monitor, and occasionally speaks to him by phone, these methods of communication are no substitute for the ease and intimacy of correspondence. The County's mail policy has substantially damaged her ability to express herself and to connect with her son.

### Wumi Oladipo

85.     Plaintiff Wumi Oladipo, who resides in Alameda County, is the significant other of Zachary Greenberg. Ms. Oladipo works as a clinical researcher at a biotechnology company and is studying to go to medical school.

86.     The invasiveness of MailGuard has inhibited Ms. Oladipo's expression and association with others. She initially continued to send mail to Mr. Greenberg after the County implemented MailGuard, but she was unaware of the mail policy until Mr. Greenberg called her because he was upset about its adoption. Ms. Oladipo became uncomfortable using MailGuard because of concerns about the County's surveillance of her letters and photographs, as well as the lack of clear limits on their use and storage by Smart Communications. In February 2022, she made the difficult decision to stop sending physical mail to Mr. Greenberg altogether.

87.     The inability to send Mr. Greenberg physical letters has profoundly affected Ms. Oladipo's expression and communication. Letters were integral to Ms. Oladipo's ability to sustain a romantic relationship with Mr. Greenberg when he became incarcerated. Both keep a collection of the physical correspondence that they sent to each other. Before the mail ban, they played games like crosswords and tic tac toe via mail, and Ms. Oladipo sometimes sprayed her perfume on or kissed the letters she sent to Mr. Greenberg. Now that Ms. Oladipo cannot rely on mail for these purposes, she has found it much more challenging to support and meaningfully communicate with Mr. Greenberg. As a dark-skinned Black woman, Ms. Oladipo has particular difficulty with Smart Communications' video visitation software. The software's facial recognition technology often does not recognize Ms. Oladipo's face, which makes it frustrating—and often impossible—to

conduct video calls. And although she and Mr. Greenberg speak on the phone, these brief conversations are more logistical in nature and do not create the same feeling of intimacy that their letters once did. Without mail, Ms. Oladipo struggles to maintain her connection to Mr. Greenberg.

## CAUSES OF ACTION

### COUNT ONE

*First Amendment to the U.S. Constitution (42 U.S.C. § 1983)*

*On behalf of all Plaintiffs against all Defendants*

88.     Defendants' mail policy—which includes opening, examining, destroying, and digitizing physical mail and retaining mail and sender information for subsequent investigative use—violates the First Amendment because it eliminates an entire medium of communication, because it chills the expressive and associational activity of Plaintiffs and others, because it is not rationally related to any legitimate penological goals, and because it leaves no adequate alternatives to communication via physical mail.

89.     In carrying out this policy, Defendants act under color of state law to operate a program that violates the First Amendment.

### COUNT TWO

*Article 1, Section 2 of the California Constitution*

*On behalf of all Plaintiffs against all Defendants*

90.     For the same reasons, Defendants' mail policy violates Article I, Section 2 of the California Constitution.

### COUNT THREE

*Fourth Amendment to the U.S. Constitution (42 U.S.C. § 1983)*

*On behalf of all Plaintiffs against all Defendants*

91.     Defendants' mail policy violates the Fourth Amendment because it constitutes an unreasonable search and seizure of correspondence and other information in which Plaintiffs and others maintain a reasonable expectation of privacy and a possessory interest, and because the policy is not rationally related to any legitimate penological goal.

92.     In carrying out this policy, Defendants act under color of state law to operate a program that violates the Fourth Amendment.

## COUNT FOUR

### *Article I, Section 13 of the California Constitution*

### *On behalf of all Plaintiffs against all Defendants*

93.     For the same reasons, Defendants' mail policy violates Article I, Section 13 of the California Constitution.

## COUNT FIVE

### *Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc et seq.)*

### *On behalf of Plaintiffs Zachary Greenberg, Ruben Gonzalez-Magallanes, and Kevin Prasad*

### *against all Defendants*

94.     Defendants' mail policy, as applied to Plaintiffs Zachary Greenberg, Ruben Gonzalez-Magallanes, and Kevin Prasad, violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because it imposes a substantial burden on their ability to access, study, and share religious texts and because it is not the least restrictive means of achieving any compelling government interest.

95.     RLUIPA applies to Defendants' conduct because Defendants receive federal funding to operate the San Mateo County Sheriff's Office, which includes its corrections division. Additionally, Defendants' policy affects interstate commerce because it affects the mail.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

A.      Declare that Defendants' mail policy—which includes opening, examining, destroying, and digitizing physical mail and retaining mail and sender information for subsequent investigative use—violates the First and Fourth Amendments to the U.S. Constitution.

B.      Declare that Defendants' mail policy violates Article I, Section 2 and Article I, Section 13 of the California Constitution.

C.      Declare that as applied to Plaintiffs Zachary Greenberg, Ruben Gonzalez-

29

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Magallanes, and Kevin Prasad, Defendants' mail policy violates the Religious Land Use and Institutionalized Persons Act.

D.    Enjoin Defendants and their agents from digitizing and subsequently destroying incoming physical mail.

E.    Enjoin Defendants and their agents from denying incarcerated people access to physical copies of their mail.

F.    Enjoin Defendants and their agents from retaining digital copies of incoming physical mail without reasonable suspicion of wrongdoing.

G.    Order Defendants to provide to those incarcerated in San Mateo County's jails a physical copy of all mail addressed to them that was digitized through MailGuard, and to subsequently expunge all copies of such mail collected through MailGuard.

H.    Enjoin Defendants from continuing to read, search, or otherwise use the scanned mail and other information collected through MailGuard.

I.    Award Plaintiffs reasonable costs and attorneys' fees incurred in this action.

J.    Grant such other and further relief as the Court may deem just and proper.

Dated: March 9, 2023

Respectfully Submitted,

STEPHANIE KRENT (*Pro Hac Vice* motion forthcoming)
ALEX ABDO (*Pro Hac Vice* motion forthcoming)
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, NY 10115
Tel.: (646) 745-8500
Fax: (646) 661-3361
Email: stephanie.krent@knightcolumbia.org
    alex.abdo@knightcolumbia.org

CARA GAGLIANO (SBN 308639)
AARON MACKEY (SBN 286647)
MUKUND RATHI (SBN 330622)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333
Fax: (415) 436-9993
Email: cara@eff.org
    amackey@eff.org
    mukund@eff.org

MARIA DEL PILAR GONZALEZ MORALES (SBN 308550)

30

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EMILY OLIVENCIA-AUDET (SBN 342116)
SHUBHRA SHIVPURI (SBN 295543)
SOCIAL JUSTICE LEGAL FOUNDATION
523 West 6th Street, Suite 450
Los Angeles, CA 90014
Tel.: (213) 973-4063
Fax: (213) 973-4063
Email: pgonzalez@socialjusticelaw.org
        eolivencia@socialjusticelaw.org
        sshivpuri@socialjusticelaw.org

*Attorneys for Plaintiffs*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Division
400 County Center, 1st Floor, Room A Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

FOR COURT USE ONLY

# FILED

## SAN MATEO COUNTY

3/9/2023

**Clerk of the Superior Court**
/s/ Jennifer Torres
DEPUTY CLERK

PETITIONER/PLAINTIFF:  **A.B.O. COMIX; KENNETH ROBERTS; ZACHARY GREENBERG; RUBEN GONZALEZ-MAGALLANES; DOMINGO AGUILAR; KEVIN PRASAD; MALTI PRASAD; WUMI OLADIPO**

RESPONDENT/DEFENDANT:  **COUNTY OF SAN MATEO; CHRISTINA CORPUS**

**NOTICE OF ASSIGNMENT FOR ALL PURPOSES (CIVIL) AND NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
**23-CIV-01075**

By order of the Presiding Judge pursuant to San Mateo County Superior Court Local Rule 3.200(a) the above entitled matter is assigned for all purposes to: **Judge V. Raymond Swope** in **Department 23.**

### An Initial Case Management Conference is set before the Civil Commissioner (and not with the assigned Judge), as follows:
### DATE: 7/13/2023
### TIME: 9:00 AM
### LOCATION: 800 North Humboldt Street, San Mateo, CA 94401

REMOTE APPEARANCES ARE STRONGLY ENCOURAGED.  Please visit our website for information on remote appearances and use the "Civil Commissioner" Credentials:
https://www.sanmateocourt.org/general_info/remote_appearance.php

ASSIGNED DEPARTMENT INFORMATION

To schedule a Law and Motion Hearing, please see Local Rule 3.402, or visit the assigned Judicial Officer's webpage at: www.sanmateocourt.org/civiljudges.

Contact information for your assigned department is as follows:

| Judicial Officer | Department Phone | Department E-mail |
|---|---|---|
| V. Raymond Swope | 650-261-5123 | Dept23@sanmateocourt.org |

CASE MANAGEMENT CONFERENCE INFORMATION

You are hereby given notice of your Initial Case Management Conference.  The date, time and department are noted above.

1. In accordance with applicable California Rules of the Court and Local Rules, you are hereby ordered to:
   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 3.110(b); Local Rule 3.804).
   b) Serve a copy of this Notice, blank form of the Case Management Statement and ADR Information Package on all named parties in this action (Local Rule 3.804(a)). Documents are available online under the CIVIL CMC Packet section at: http://sanmateocourt.org/court_divisions/civil/
   c) File and serve a completed Case Management Statement at least 15 days before the Case Management

Rev. November 2020

Conference (CRC 3.725; Local Rule 3.805(c)). Failure to do so may result in monetary sanctions or the continuance of the CMC.

   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 days before the date set for the Case Management Conference (Local Rule 3.805(b)).

2. Parties may proceed to an Appropriate Dispute Resolution process ("ADR") by filing a *Stipulation and Order to ADR* (Local Form ADR-CV-1). File and serve the completed *Stipulation and Order to* ADR form at least 12 days prior to the Case Management Conference (Local Rule 3.805(f)). You may find this form and information regarding the Civil ADR Program online at http://sanmateocourt.org/court_divisions/adr/civil/

For additional information, you may visit the Judicial officer's webpage at: www.sanmateocourt.org/civiljudges

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, ☐ by hand ☐ by electronic service to the parties or their counsel of record at the email addresses set forth below and shown by the records of this Court  or  ☒ by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this Court, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Redwood City, California.

Date: 3/9/2023

                                     Neal I Taniguchi, Court Executive Officer/Clerk

                                By:   /s/ Jennifer Torres
                                       Jennifer Torres, Deputy Clerk

Notice being served on:

   CARA GAGLIANO
   ELECTRONIC FRONTIER FOUNDATION
   815 EDDY STREET
   SAN FRANCISCO, CA  94109

   MARIA DEL PILAR GONZALEZ MORALES
   SOCIAL JUSTICE LEGAL FOUNDATION
   523 WEST 6TH STREET, SUITE 450
   LOS ANGELES, CA  90014

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

## WHAT IS APPROPRIATE DISPUTE RESOLUTION?

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.   Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.   All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

## WHAT ARE THE ADVANTAGES OF USING ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.**  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.  Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

### Arbitration, Mediation, and Neutral Evaluation

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.   The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

<u>Arbitration:</u> An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes.  Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations.  The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

## CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk.  Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here.  Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint.  An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC.  ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days.  If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more Information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

Form ADR-CV-8 "Court ADR Information Sheet ADR-CV-8" [Rev. Feb. 2014]

**CM-110**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |

TELEPHONE NO.:                    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:                    Dept.:              Div.:              Room:

Address of court *(if different from the address above)*:

☐  Notice of Intent to Appear by Telephone,  by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
       (1) ☐  have not been served *(specify names and explain why not)*:

       (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:

       (3) ☐  have had a default entered against them *(specify names)*:

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a.   Type of case in ☐  complaint  ☐  cross-complaint    *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request  ☐  a jury trial  ☐  a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐  The trial has been set for *(date):*
b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐  days *(specify number):*
b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial  ☐  by the attorney or party listed in the caption  ☐  by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel  ☐  has  ☐  has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐  The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply):*
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other *(specify):*

e.   ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f.   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g.   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
a.   ☐ Insurance carrier, if any, for party filing this statement *(name):*

b.   Reservation of rights: ☐ Yes   ☐ No

c.   ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy   ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
a.   ☐ There are companion, underlying, or related cases.
(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:
☐ Additional cases are described in Attachment 14a.

b.   ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

**15. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21.** Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| _____ | ▶ _____ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached. |

**CASE MANAGEMENT STATEMENT**



Knight First Amendment Institute
475 Riverside Dr, Suite 302
New York NY 10115-0116

9414 8118 9956 2 67 7525 11

PS Form 3800 6/02

RECEIVED
IN THE OFFICE OF

MAR 1 7 2023

CLERK OF THE
BOARD OF SUPERVISORS

Clerk of the Board of Supervisors
Hall of Justice and Records
400 County Ctr
Redwood City CA 94063-1662

EXHIBIT 2

Plaintiff's Name Sheldon Johnson

Prisoner No. 1236084

Institutional Address MAGUIVE CORRECTIONAL
Facility 1300 Maple STREET
Redwood City, CA 94063

**FILED**

Mar 03 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Sheldon Johnson
*(Enter your full name)*

v.

SAN MATEO COUNTY

DAVE PINE, CAROLE GROOM
DON HORSELY, WARREN SLOCUM
DAVID J. CANEPA
*(Enter the full name(s) of all defendants in this action)*

Case No. 5:22-cv-001342-SVK
*(Provided by the clerk upon filing)*

**COMPLAINT BY A PRISONER
UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983**

## I. Exhaustion of Administrative Remedies.

You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.

A. Place of present confinement **Maguire correctional FACILITY 1300 Maple STREET Redwood City, CA 94063**

B. Is there a grievance procedure in this institution? ☐ YES ☐ NO

C. If so, did you present the facts in your complaint for review through the grievance procedure?
☐ YES ☐ NO

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

    1.   Informal appeal: _____

_____

_____

    2.   First formal level: _____

_____

_____

3. Second formal level: _____

_____

_____

4. Third formal level: _____

_____

E. Is the last level to which you appealed the highest level of appeal available to you?
☐ YES          ☐ NO

F. If you did not present your claim for review through the grievance procedure, explain why.

THIS IS A CONSTITUTIONAL FIRST AMENDMENT
VIOLATION DENIES PLAINTIFF U.S POSTAL MAIL
SERVICES TO CUSTODY FACILITY

## II. Parties.

A. If there are additional plaintiffs besides you, write their name(s) and present address(es).

Other PLAINTIFF'S ARE FILING THEIR OWN SEPERATE
CIVIL RIGHTS 42 U.S.C 1983 COMPLAINT

B. For each defendant, provide full name, official position and place of employment.

SAN MATEO COUNTY BOARD OF SUPERVISORS
DAVE PINE, CAROLE GROOM, DON HORSELY
WARREN SLOCUM, DAVID CANEPA
COUNTY GOVERNMENT CENTER FIRST FLOOR ROOM,
400 COUNTY CENTER Redwood City, CA 94063

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

THIS IS A CONSTITUTIONAL FIRST AMENDMENT
VIOLATION DENIES PLAINTIFF U.S POSTAL MAIL
SERVICES TO CUSTODY FACILITY

_____

*Prisoner Complaint (rev. 12/2020)*

PLAINTIFF Alleges ON April 04, 2021 THe Sheriff
COUNTY Authorities Stop ALL INMATES INCOMING MAIL
POSTAl Services Throughout THe Maguire CORRECTIONAl Facility
To ALL INMATES IN Custody.

Furthermore PLAINTIFF NOT INVOlved INMATes CONNECTed
With SomeONe OUTSide THe CommUNITY A suspect
CONSpired WITh Other INMATes TO Smuggle IN CUSTOdy
13 Film STrip OF SUbOXONe Through THe CUSTOdy MAIL
POSTAL SERVICE System.

AND AS A ResUlT THe Sheriff AuThorities FAIled TO
IdeNTIFy A INMATe SUSPeCT OTHer ThAN PLAINTIFF A
INMATe SUSPeCT IN CUSTOdy A SUSpecT WhO HAd
AUThORIZed A CommUNITy SUSPeCT TO Smuggle IN
CUSTOdy 13 Film STRIps OF SUbOXONe ThvoUgh the CUSTOdy
MAIL POSTAl System.

ANd AS A PROXIMATe CAUSE THe Sheriff AuThorities
SHUT dowN ALL PLAINTIFF CUSTOdy INComiNg hANdWRITTeN
MAILed LeHevs PLAINTIFF To hAVe No MORe ACCesS TO ReCeive
ANy POSTAL MAIL SERVICes deliVeved TO PLAINTIFF CUSTOdy
HOUSING UNIT FACIlity Addvess.

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want
the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

PLAINTIFF Respectfully RequesT A pheliminary INJUNCTION ReIieF Ovder
ANd AppoINTMeNT OF COUNSeL 28 U.S.C 1915 (e) (1) PLAINTIFF RequeST
NominAl damages RelieF $500.00 A MonTh From The Time
defendants STop PLAINTIFF POSTAl MAIL SERVICes LNTIL DeFendANTS Restore
PLAINTIFF MAIL SERvICes bACK TO PLAINTIFF CUSTOdy hOUSiNg UNIT FACIlity
Addvess ANd OTHer AssessmeNT This COURT may deem proper, JUST ANd
equitable

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: 2/28/22
_____
Date

_____
Signature of Plaintiff

1   AND AS A PROXIMATE CAUSE defendANTS CONTINUE
2   to deprive PLAINTIFF his CONSTITUTIONAl FIRST
3   AmendmeNT Rights TO eNJoy THe Rights TO Receive
4   INcomINg mAIL POSTAl SeRVICeS HANdWRITINg LeHers
5       AlLeged FRom PLAINTIFF FAmily members, FRieNds
6   childreN, AND oTher OUTSide ReLATed BUSINeSS AlLeqe
7   Resources.
8   AND hereby DeFeNdANTS CONTINUe TO OBSTRUCT, AND
9   preveNT AND ReTURN PLAINTIFF mAIL POSTAl seRVICeS
10  bAcK TO THe CommUNITy mAIL SeNder ThereTo
11  IN VIOLATION TO PLAINTIFF FIRST AmendmeNT AlLege
12  CONSTITUTIONAl Rights TO THe UNITed STATeS CONSTITUTION

Sheldon Johnson # 12360084
Maguire Correctional Facility
1300 Maple Street
Redwood City, CA 94063

**FILED**

Mar 03 2022

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Case No: 5:22-cv-001342-SVK

United States District Court
Northern District of California
450 Golden Gate Avenue 16th Floor
San Francisco, CA 94102

RECEIVED

MAR 02 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

INSPECTED BY

MAR 02 2022

U.S. MARSHALS SERVICE





San Francisco P&DC 941
MON FEB 28 2022 PM



EXHIBIT 3

Query   Reports ▾   Utilities ▾   Help   Log Out

CLOSED,ProSe

# U.S. District Court
## California Northern District (San Jose)
### CIVIL DOCKET FOR CASE #: 5:22-cv-01342-BLF

Johnson v. San Mateo County et al
Assigned to: Judge Beth Labson Freeman
Referred to: PSLC HHL
Cause: 42:1983 Civil Rights Act

Date Filed: 03/03/2022
Date Terminated: 08/24/2022
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Sheldon Johnson**                              represented by **Sheldon Johnson**
1236084
Maguire Correctional Facility
1300 Maple Street
Redwood City, CA 94063
PRO SE

V.

**Defendant**

**San Mateo County**

**Defendant**

**Dave Pine**

**Defendant**

**Carole Groom**

**Defendant**

**Don Horsley**

**Defendant**

Supervisor Warren Slocum

Supervisor Warren Slocum

**Defendant**

David J. Canepa

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2022 | 1 | COMPLAINT against David J. Canepa, Carole Groom, Don Horsely, Dave Pine, San Mateo County, Warren Slocum. Filed by Sheldon Johnson. Consent/Declination due by 4/4/2022. (Attachments: # 1 Envelope)(anj, COURT STAFF) (Filed on 3/3/2022) (Entered: 03/03/2022) |
| 03/03/2022 | 2 | MOTION for Leave to Proceed in forma pauperis filed by Sheldon Johnson. (anj, COURT STAFF) (Filed on 3/3/2022) (Entered: 03/03/2022) |
| 03/03/2022 | 3 | Letter from Sheldon Johnson. (anj, COURT STAFF) (Filed on 3/3/2022) (Entered: 03/03/2022) |
| 03/03/2022 | 4 | Notice of Assignment of Prisoner Case to Magistrate Judge (anj, COURT STAFF) (Filed on 3/3/2022) |
| | | <div align="center"><small>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</small></div> (Entered: 03/03/2022) |
| 03/07/2022 | 5 | **ORDER DIRECTING CLERK TO REASSIGN CASE. Signed by Judge Susan van Keulen on 3/7/2022. (svklc1, COURT STAFF) (Filed on 3/7/2022)** |
| | | <div align="center"><small>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**</small></div> **(Entered: 03/07/2022)** |
| 03/08/2022 | 6 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Beth Labson Freeman for all further proceedings. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Magistrate Judge Susan van Keulen no longer assigned to case. Reassignment Order signed by Clerk on 3/8/2022. (Attachments: # 1 Notice of Eligibility for Video Recording)(bw, COURT STAFF) (Filed on 3/8/2022)** |
| | | <div align="center"><small>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**</small></div> **(Entered: 03/08/2022)** |
| 07/11/2022 | 7 | **ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS by Judge Beth Labson Freeman. Granting 2 Motion for Leave to Proceed in forma pauperis.** (tsh, COURT STAFF) (Filed on 7/11/2022) |
| | | <div align="center"><small>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</small></div> **(Entered: 07/11/2022)** |
| 07/11/2022 | 8 | **ORDER OF DISMISSAL WITH LEAVE TO AMEND; DENYING MOTION FOR APPOINTMENT OF COUNSEL. Signed by Judge Beth Labson Freeman on 7/11/2022. Amended Complaint due by 8/8/2022.** |

| | | |
|---|---|---|
| | | **(tsh, COURT STAFF) (Filed on 7/11/2022)** |
| | | <div align="center">Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</div> **(Entered: 07/11/2022)** |
| 08/24/2022 | 9 | **ORDER OF DISMISSAL. Signed by Judge Beth Labson Freeman on 8/24/2022. (Attachments: # 1 Certificate/Proof of Service)(tsh, COURT STAFF) (Filed on 8/24/2022)** |
| | | <div align="center">Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</div> **(Entered: 08/24/2022)** |
| 08/24/2022 | 10 | **JUDGMENT. Signed by Judge Beth Labson Freeman on 8/24/2022. (Attachments: # 1 Certificate/Proof of Service)(tsh, COURT STAFF) (Filed on 8/24/2022)** |
| | | <div align="center">Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)</div> **(Entered: 08/24/2022)** |
| 09/13/2022 | 11 | Mail returned as undeliverable ("not in custody") re 10 Judgment, 9 Order,. Mail Returned; response required by 11/14/2022. (anj, COURT STAFF) (Filed on 9/13/2022) Modified on 3/31/2023 (ljf, COURT STAFF). (Entered: 09/13/2022) |

<div align="center">

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/24/2023 14:27:27 | | | |
| **PACER Login:** | nightsky500 | **Client Code:** | 3042-0000-SXB |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-01342-BLF |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

</div>

EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHELDON JOHNSON,

        Plaintiff,

    v.

SAN MATEO COUNTY, et al.,

        Defendants.

Case No. 22-cv-01342 BLF (PR)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND; DENYING MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff, a state prisoner, filed a civil rights action under 42 U.S.C. § 1983 against the San Mateo County Board of Supervisors for unconstitutional prison conditions at the Maguire Correctional Facility ("MCF") in Redwood City, where Plaintiff is currently confined. Dkt. No. 1. In the complaint, Plaintiff requests appointment of counsel. *Id.* at 3. Plaintiff has filed a motion for leave to proceed *in forma pauperis*, which shall be addressed in a separate order. Dkt. No. 1. This matter was reassigned to the Undersigned on March 8, 2022. Dkt. Nos. 5, 6.

**DISCUSSION**

A.   **Standard of Review**

A federal court must conduct a preliminary screening in any case in which a

United States District Court
Northern District of California

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## B.  <u>Plaintiff's Claims</u>

Plaintiff claims that his First Amendment right to receive mail was violated when the "Sheriff County Authorities" stopped all inmates' incoming mail postal services throughout MCF on April 4, 2021. Dkt. No. 1 at 3. Apparently, this action was taken because someone outside the community was conspiring with inmates to smuggle "13 film strip of suboxone" into the jail through the mail. *Id.* Plaintiff claims the "Sheriff Authorities" failed to identify the suspect and instead shut down all incoming letters, including letters from family, friends, children, and businesses. *Id.* at 3-4. Plaintiff seeks injunctive relief, appointment of counsel, and damages. *Id.* at 3.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning *incoming* mail received by prisoners from non-prisoners. *See Thornburgh*, 490 U.S. at 413. Prisoners also have a liberty interest in

2

United States District Court
Northern District of California

the receipt of mail, including subscription publications, which triggers procedural due process guarantees. *Krug v. Lutz*, 329 F.3d 692, 696-967 (9th Cir. 2003). If prison officials withhold mail, a prisoner has a due process right to receive notice that his incoming mail is being withheld. *See Frost v. Symington*, 197 F.3d 348, 353-54 (9th Cir. 1999); *see also Prison Legal News v. Cook*, 238 F.3d 1145, 1152-53 (9th Cir. 2001) (holding that due process rights apply to withheld mail where prisoners had constitutionally protected right to receive the mail).

Plaintiff's allegations implicate his First Amendment and due process rights, but they are insufficient to state a claim. First, he fails to establish that the named Defendants are liable for the violation of these rights. Plaintiff names the San Mateo County Board of Supervisors (the "Board") and its individual members as Defendants in this action. Dkt. No. 1 at 2. But nowhere in the complaint does he specifically allege that the Board or its individual members were involved in the decision to stop incoming mail at MCF. Rather, he alleges that the "Sheriff Authorities" made this decision. *See supra* at 2. Therefore, the appropriate Defendants for his First Amendment claim would be the state actors at MCF who made that decision, not the Board. Furthermore, Plaintiff's allegations indicate that the decision to stop all mail was related to a legitimate penological interest, *i.e.*, to stop contraband from coming into the prison. Therefore, in order to state a cognizable First Amendment claim, Plaintiff must allege that the appropriate Defendants' actions were not reasonably related to a legitimate penological interest under *Turner*. Secondly, Plaintiff may be able to state a due process claim if he can allege that he was not given notice that his incoming mail was going to be withheld. *See Frost*, 197 F.3d at 353-54. Plaintiff shall be granted leave to file an amended complaint to allege sufficient facts to state claims under the First Amendment and due process.

The Court also notes that Plaintiff may not have exhausted administrative remedies before filing this action. Dkt. No. 1 at 2. Under the section I, Exhaustion of Administrative Remedies, Plaintiff failed to answer any of the questions. Dkt. No. 1 at 1-

2. Instead, he indicates that he did not present his claim for review through the grievance procedure because "[t]his is a constitutional First Amendment violation denies [*sic*] Plaintiff U.S. postal mail services to custody facility." Dkt. No. 1 at 2. The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. *Id.* at 85-86 (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)). The mandatory exhaustion of available administrative remedies is not limited to suits under § 1983, but to any suit challenging prison conditions. *Id.* at 85 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Lastly, the PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Id.* at 93.

Plaintiff is advised that he must have exhausted administrative remedies for this First Amendment claim, or any claim, before he can proceed with claims in this Court. As such, if he has not yet exhausted all the claims herein, then this action must be dismissed without prejudice. Plaintiff may return and file a new action only after he has exhausted all available administrative remedies through MCF's inmate grievance procedures.

However, if Plaintiff has exhausted administrative remedies since filing this action and can proceed, Plaintiff may indicate that he has exhausted in an amended complaint. In preparing an amended complaint, Plaintiff should keep the following legal standards in mind. Liability may be imposed on an individual defendant under § 1983 only if Plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*,

664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See Leer*, 844 F.2d at 633.

## C.    <u>Motion for Appointment of Counsel</u>

Plaintiff requests appointment of counsel as a form of relief.  Dkt. No. 1 at 3.  There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation.  *See Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981); *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in § 1983 action), *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952 (9th Cir. 1998) (en banc).  The decision to request counsel to represent an indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984).  Plaintiff has set forth no grounds to warrant appointment of counsel.  Accordingly, the motion is DENIED for lack of exceptional circumstances.  *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Rand,* 113 F.3d at 1525 (9th Cir. 1997); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

## CONCLUSION

For the reasons state above, the Court orders as follows:

1.    The complaint is **DISMISSED with leave to amend**.  Within **twenty-eight (28) days** from the date this order is filed, Plaintiff shall file an amended complaint using the court's form complaint to correct the deficiencies described above.  The amended complaint must include the caption and civil case number used in this order, *i.e.*, Case No. C 22-cv-01342 BLF (PR), and the words "AMENDED COMPLAINT" on the first page. Plaintiff must answer all the questions on the form in order for the action to proceed,

United States District Court
Northern District of California

including the section on exhaustion. Plaintiff is reminded that the amended complaint

supersedes the original, and Plaintiff may not make references to the original complaint.

Claims not included in the amended complaint are no longer claims and defendants not

named in an amended complaint are no longer defendants. *See Ferdik v. Bonzelet*, 963

F.2d 1258, 1262 (9th Cir.1992).

    2.    **Failure to respond in accordance with this order by filing an amended**

**complaint in the time provided will result in the dismissal of this action with**

**prejudice for failure to state a claim without further notice to Plaintiff.**

    **IT IS SO ORDERED.**

**Dated: __July 11, 2022_____**

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

EXHIBIT 5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHELDON JOHNSON,

        Plaintiff,

    v.

SAN MATEO COUNTY, et al.,

        Defendants.

Case No. 22-cv-01342 BLF (PR)

**ORDER OF DISMISSAL**

Plaintiff, a state prisoner, filed a civil rights action under 42 U.S.C. § 1983 against the San Mateo County Board of Supervisors for unconstitutional prison conditions at the Maguire Correctional Facility ("MCF") in Redwood City. Dkt. No. 1. On July 11, 2022, the Court screened the complaint and dismissed it with leave to amend to attempt to correct various deficiencies. Dkt. No. 8. Plaintiff was directed to file an amended complaint within twenty-eight days of the order, and that failure to respond would result in the dismissal of the action with prejudice for failure to state a claim. *Id.* at 6.

The deadline has passed, and Plaintiff has failed to file an amended complaint in the time provided. Accordingly, this action is DISMISSED with prejudice for failure to state a claim.

The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

**Dated:  ___August 24, 2022_____**

BETH LABSON FREEMAN
United States District Judge

Order of Dismissal
PRO-SE\BLF\CR.22\01342Johnson_dism(no-amend)

2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHELDON JOHNSON,

        Plaintiffs,

    v.

SAN MATEO COUNTY, et al.,

        Defendants.

Case No.: 5:22-cv-01342-BLF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that:

(1)    I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California; and

(2)    On 8/24/2022, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's office.

Sheldon  Johnson ID: 1236084
Maguire Correctional Facility
1300 Maple Street
Redwood City, CA 94063

Dated: 8/24/2022

Mark B. Busby
Clerk of Court, United States District Court

By: _____
Tiffany Salinas-Harwell, Deputy Clerk to
the Honorable Beth Labson Freeman

*Service_Certificate _CRD*
*rev. August 2018*

# EXHIBIT 6

FILED

JUL 25 2022

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

2  Name: Prasad          Kevin
   _____(Last)_____ _____(First)_____ _____(Middle)_____

3

4  Prisoner Number: 1222492

5  Institutional Address:    1300 Maple St
                             Redwood City, CA 94063

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10 Kevin B Prasad
   (Enter your full name.)

11                                    Case No. 5:22-cv-01346-JST
                    vs.               (Leave blank; to be provided by Clerk of Court)

12 Carlos G Bolanos, Kristina Bell       Amended
                                      COMPLAINT UNDER THE
13 Mark C Robbins, Alma Zamorra        CIVIL RIGHTS ACT,
                                      42 U.S.C. § 1983
14 John W Munsey, John Kovach
   (Enter the full name(s) of the defendant(s) in this action.)

15

16

17 I. Exhaustion of Administrative Remedies.

18 Note: You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any
   unexhausted claims.

19 A.  Place of present confinement  Maple Street Correctional Center (MSCC)

20 B.  Is there a grievance procedure in this institution?    YES ☒    NO ☐

21 C.  If so, did you present the facts in your complaint for review through the grievance

22     procedure?    YES ☒    NO ☐

23 D.  If your answer is YES, list the appeal number and the date and result of the appeal at each

24     level of review. If you did not pursue any available level of appeal, explain why.

25         1. Informal appeal:  There is No informal level

26     _____

27     _____

28

   COMPLAINT Page 1 of 4

2. First formal level: No grievance number provided; 25 Oct 2021. # Sergeant said. basically legal mail is delivered, and the rest is illegible to inmate

3. Second formal level: No appeal number provided; 8 Nov 2021; No response given by SMCSO

4. Third formal level: # There is no Third level

E. Is the last level to which you appealed the highest level of appeal available to you?

   YES ☒     NO☐

F. If you did not present your claim for review through the grievance procedure, explain why.

## II. Parties.

A. Write your name and present address. Do the same for additional plaintiffs, if any.

Kevin B Prasad
1300 Maple St
Redwood City CA, 94063

B. For each defendant, provide full name, official position and place of employment.
Carlos G Bolanos - Sheriff  San Mateo County Sheriffs Office (SMCSO)

Mark C Robbins - Undersheriff (SMCSO
John W Munsey - Assistant Sheriff SMCSO
Kristina Bell - Captian - Facility Commander # MSCC
Alma Zamora - Captian - Facility Commander Maguire Correctional Facility
John Kovach - Lieutenant (SMCSO - Administrative Lieutenant.
330 Bradford St. Redwood City, CA 94063

COMPLAINT *Page 2 of 4*

III. Statement of Claim.

Plaintiff is a pre-trial detainee of San Mateo County Sheriffs Office (SMCSO) and has been since 26 April 2018.

In a matter unrelated to plaintiff and outside the judiciary scope of SMCSO, and also as a result of allegations pertaining to individuals with no connection to Plaintiff, the SMCSO is currently implementing an institutional policy of banning any and all correspondence (with the exception of legal correspondence) from entering the facility, with no penological interest shown and without any foundational premise regarding plaintiff as being subject to such punishment, which, because of its unusual severity and affective radius, falls under the realm of corporeal, and a flagrant disregard of plaintiffs Constitutional rights.

Plaintiff alleges that in furtherance of the liberal application of "penological interest" and the ad hoc imposition of institutional policies by SMCSO and its employees directly related to the implementation of indicated policies plaintiff contends that all deputies

3

1 who handle institutional literature reception policy as well
2 as the improper discretionary censoring of literature
3 deliverable through the United States Postal Service negates
4 their discretionary immunity and thus finds them in
5 pari delicto of a continuance of coporeal punishment
6
7 suffered by the plaintiff due to precedents set outside
8 the relevant judiciary scope of MSCC. The discretionary
9
10 censorship applied by SMCSO, plaintiff alleges, holds
11 himself and his benefactors outside of MSCC in pari
12
13 causa regarding the freedom of choice in purchasing
14 literature.

15       In conjunction with and within the civil radius
16
17 affected by the parties liable in the previous
18 paragraph, SMCSO and its deputies, with equal fault,
19
20 use purposely ubiquitous terminology which, although
21 perhaps fully tangent to, falls outside the scope
22 of the defined parameters, outlining a policy which
23 defines and subsequently rejects outright unacceptable
24
25 pornographic pictures being received by inmates, so
26 specifically adds pictures which are "provacative," while
27
28 also, under color of law and institutional policy equating

4

1 legal judgement with equal discretion allows deputies to
2 censor inmate pictures based upon their own inherently
3 subjective opinion which fall under the "provocative"
4
5 banner. This allows defendants to censor pictures which
6 are not pornographic by nature, yet labeled "provocative"
7 due to either the deputies personal beliefs or their
8
9 discrimination of a certain inmate.

10 * Defendants continue to obstruct, prevent, and
11 return plaintiff correspondence back to the community,
12 continue to restrict which publishers plaintiff can receive
13
14 books from, discriminately use the "provocative" pictures
15 policy to discriminate which publications plaintiff has access
16 to, indifferentially using the "provocative" pictures policy on
17
18 pictures sent to the plaintiff from members of the community
19 and family members connected to plaintiff, and discrimination
20
21 based on class, income, etc., as to correspondence ~~which~~ as
22
23 Florida is across the country.

24 IV. Relief.
25 Plaintiff respectfully requests a preliminary
26 injunction relief order and appointment of counsel,
27 nominal damages relief $500.00 a month from the
28

5

1  time defendants stop plaintiff correspondence until defendants
2  restore plaintiff correspondence back to plaintiff custody
3
4  housing unit, facility address and any other assessment
5  this court may deem proper, just and equitable.
6
7
8
9
10
11  I DECLARE UNDER PENALTY OF PERJURY THAT
12  THE FOREGOING IS TRUE AND CORRECT.
13
14  Signed this 21st day of July, 2022
15
16
17  Ken B Ped
18
19
20
21
22
23
24
25
26
27
28

6

Kevin Prasad #12221192
1300 Maple St
Redwood City, CA 94063

**RECEIVED**

JUL 2 5 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Privileged (Confidential)

SAN FRANCISCO CA 940

22 JUL 2022 PM 5 L

Office of the Clerk
U.S. District Court
Northern District of California
450 Golden Gate Ave
San Francisco, CA 94102

94102-348999

PRIVLEGED CONFIDENTIAL

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131

© USPS 2019

EXHIBIT 7

1    **PAULA CANNY, SBN 96339**
     **LAW OFFICE OF PAULA CANNY**
2    840 Hinckley Road, Suite 101
     Burlingame, CA 94010
3    Telephone: (650) 652-7862
     Facsimile: (650) 652-7835
4    Email: defensedog@aol.com

5
     **ARA JABAGCHOURIAN, SBN 205777**
6    **LAW OFFICES OF ARA JABAGCHOURIAN, P.C.**
     1650 S. Amphlett Boulevard, Suite 216
7    San Mateo, CA 94402
     Telephone: (650) 437-6840
8    Facsimile: (650) 403-0909
     Email: ara@arajlaw.com
9

10   **RANDALL KNOX, SBN 113166**
     **THE LAW OFFICE OF RANDALL KNOX**
11   870 Market Street, Suite 820
     San Francisco, CA 94102
12   Telephone: (415) 765-7500
     Facsimile: (415) 765-7501
13   Email: randallknoxlaw@gmail.com

14
     Attorneys for Plaintiffs
15   CURTIS L. BRIGGS, ROBERT CANNY,
     and MATTHEW MURILLO
16

17                     **UNITED STATE DISTRICT COURT**
                       **NORTHERN DISTRICT OF CALIFORNIA**
18

19   CURTIS L. BRIGGS, an individual;          **Case No.:**
     ROBERT CANNY, an individual; and
20   MATTHEW MURILLO, an individual;           **VERIFIED COMPLAINT**
                                               **FOR INJUNCTIVE RELIEF**
21               Plaintiffs,
              vs.
22
     SAN MATEO COUNTY, a municipal
23   corporation; CARLOS BOLANOS,
     SHERIFF OF SAN MATEO COUNTY, an
24   individual; FRANK DAL PORTO,
     CAPTAIN OF THE SAN MATEO
25   COUNTY SHERIFF'S OFFICE, an
     individual; and DOES 1 through 50,
26   inclusive,

27               Defendants.

28

---
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

VERIFIED COMPLAINT ...................................................................................... 1

INTRODUCTION .................................................................................................. 1

JURISDICTION AND VENUE ............................................................................. 1

THE PARTIES....................................................................................................... 2

PART ONE

    DEFENDANTS SURVEILLANCE OF ATTORNEY-CLIENT
    COMMUNICATIONS ................................................................................ 3

PART TWO

    STOPPING SMCSO'S IMPLEMENTATION OF THE PATENTED MAILGUARD
LEGAL™ SYSTEM............................................................................................. 13

DEFENDANTS NEW LEGAL MAIL POLICY VIOLATES PLAINTIFFS FIRST
AMENDMENT RIGHTS ...................................................................................... 16

COUNT 1 - VIOLATION OF FIRST AMENDMENT RIGHTS ....................... 17

PRAYER FOR RELIEF ........................................................................................ 19

VERIFICATION OF PLAINTIFF CURTIS L. BRIGGS ................................... 21

VERIFICATION OF PLAINTIFF ROBERT CANNY ....................................... 22

VERIFICATION OF PLAINTIFF MATTHEW MURILLO.............................. 23

**VERIFIED COMPLAINT**

Attorney Curtis L. Briggs, Attorney Robert Canny, and Attorney Matthew Murillo (hereinafter "Plaintiffs"), hereby file this Verified Complaint against San Mateo County, Carlos Bolanos, the elected Sheriff of San Mateo County and Commander of the San Mateo County Sheriff's Office and Frank Dal Porto, Captain of the San Mateo County Sheriff's Office, and head of the San Mateo County Sheriff's Office Corrections Department, and other yet to be identified personnel of the San Mateo County Sheriff's Office. (hereinafter "Defendants").

**INTRODUCTION**

1. The Defendants have drastically altered policies and procedures regarding communications within the San Mateo County Jails by inmates with third parties, including attorneys.

2. The Plaintiffs are bringing this lawsuit because the Defendants' policies and practices infringe on the Plaintiffs' First Amendment Rights by interfering with Plaintiffs' attorney-client communications with incarcerated people in Defendants' jails.

3. As hereinafter explained the Defendants' policies and practices violate not just the Plaintiffs' First Amendment Rights, but also violate the First Amendment Rights of all attorneys attempting to communicate with people incarcerated in Defendants' jails.

**JURISDICTION AND VENUE**

4. This action to vindicate the First Amendment Rights of the Plaintiffs, and other attorneys and their current and prospective clients' and is brought under 42 USC § 1983. This Court has jurisdiction over this action under 28 USC § 1331.

5. Venue is proper in the Northern District of California pursuant to 28 USC § 1391(b) in that Defendants and Plaintiffs are subject to personal jurisdiction within the Northern District of California and the events that give rise to this action occurred within the Northern District of California.

**THE PARTIES**

6. Plaintiff Curtis L. Briggs, an individual, is an attorney at law, duly licensed to practice in the State of California. His State Bar Number is 284190. He represents clients housed in the Defendants' jails.

7. Plaintiff Robert Canny, an individual, is an attorney at law, duly licensed to practice law in the State of California. His State Bar Number is 251190. He represents clients housed in the Defendants' jails.

8. Plaintiff Matthew Murillo, an individual, is an attorney at law, duly licensed to practice law in the State of California. His State Bar Number is 316781. He represents clients housed in the Defendants' jails.

9. The Attorney Plaintiffs bring this action on behalf of themselves and/or attorneys who have and who may in the future have clients incarcerated in the Defendants' Jails.

10. The Attorney Plaintiffs currently represent individuals incarcerated in each of the Defendants' Jails, i.e., the Maguire Jail and the Maple Street Jail.

11. Defendant San Mateo County (hereinafter "COUNTY") is a municipal corporation duly organized and existing under the laws of the State of California. Under its authority the COUNTY operates the San Mateo County Sheriff's Office.

12. Defendant, Carlos Bolanos, is the elected Sheriff of San Mateo County. The San Mateo County Sheriff's Office performs a law enforcement function for San Mateo County and a custodial function, i.e., operates the San Mateo County's Jails, i.e., the Maguire Jail, and the Maple Street Jail.

13. The San Mateo County Sheriff's Office (hereinafter "SMCSO") is headed by elected Sheriff Carlos Bolanos.

14. Upon information and belief Sheriff Bolanos assigned SMCSO Captain Frank Dal Porto to head the SMCSO Jail operations. Captain Dal Porto commands the SMCSO's two jails, the Maguire Jail, and the Maple Street Jail.

15. Defendant Does 1-50 (hereinafter "DOE Defendants") are individuals, municipal entities, and other legally defined entities. Plaintiffs are informed and believe and thereon allege

1    that each of said fictitiously named DOE Defendants is responsible in some manner for the acts,

2    omissions and damages alleged herein.  Plaintiffs are unaware of the names and capacities of the

3    DOE Defendants, and therefore, sues these DOE Defendants under such fictitious names.

4           16.    Plaintiffs are informed and believe and hereon allege that each of the Defendants

5    was at all times an agent, a servant, an employee, a partner, joint venture, co-conspirator and/or

6    alter ego of the remaining Defendants and in so doing the things herein alleged, was acting within

7    the course and scope of that employment.  Plaintiffs are further informed and believe and thereon

8    allege that each of the Defendants herein gave consent, aid, and assistance to each of the

9    remaining Defendants and ratified and authorized the acts or omissions of each Defendant as

10   alleged herein, except as may be hereinafter specifically alleged.  At all material times each

11   Defendant was jointly engaged in the activities herein alleged and was and is an integral

12   participant in the conduct described herein resulting in the violations of Plaintiffs' Constitutional

13   rights.

14          17.    Plaintiffs are furthermore informed and believe and thereon allege that each of said

15   fictitiously named DOE Defendants was the agent, servant, and employee of Defendants and was

16   within the course and scope of his or her agency and employment and with the knowledge,

17   ratification, and consent of each respective principal.  Plaintiffs will seek leave to amend this

18   Complaint when their true names and capacities have been ascertained.

**PART ONE**

**DEFENDANTS' SURVEILLANCE OF
ATTORNEY-CLIENT COMMUNICATIONS**

22          18.    Defendants operate two jails.  The older of the two jails is called the Maguire

23   Facility.  The newer jail opened in 2016 is called the Maple Street Jail.  At the behest of

24   Defendants both jails now utilize the "Smart Communications" electronic communications

25   systems.

26          19.    The Maguire Jail holds a maximum of 1,000 inmates.  The Maple Street Jail holds

27   a maximum of 850 inmates.  Each of the jails house both sentenced prisoners and pre-trial

28   detainees.  Only the Maple Street Jail houses women.

20.     Each of the Plaintiffs communicate with their respective clients incarcerated in the Defendants' jails by paper mail mailed to their inmate clients by United States Postal Service mail.

21.     Each of the Plaintiffs communicate with their respective clients incarcerated in the Defendants' jails by going to the jails and personally meeting with their clients.  The meetings are held in rooms that are private and not monitored such that Plaintiffs' First Amendment Rights and the Sixth Amendment Rights of their clients are protected.

22.     Each of the Plaintiffs communicate with their respective clients incarcerated in the SMCSO jails by telephone.  The Defendants permit attorneys to register their telephone numbers with the phone carrier to block Defendants' personnel from monitoring attorney-client phone calls such that Plaintiffs' First Amendment Rights and the Sixth Amendment Right of their clients are protected.

23.     Each of the Plaintiffs communicate with their clients incarcerated in Defendants' jails by mailing letters (paper mail) by United States Postal Service to their clients and prospective incarcerated in the Defendants' jails.

24.     As per existing law the mailed legal letters are supposed to be opened in front of the inmate recipient by Defendants' personnel, checked for contraband and then provided to the recipient incarcerated client and/or prospective client.

25.     Defendants do not follow this procedure.  Defendants' personnel often times open legal mail outside of the presence of the inmate recipient.  Other times Defendants have sent attorney-client paper legal mail to Smart Communications in Seminole, Florida.  Smart Communications then scans the letter, and the letter is then transmitted electronically to the inmate by the Smart Communications SmartTablet™, as hereinafter explained.

26.     Since the advent of the pandemic in March 2020 the Defendants operations of the jails were impacted.   Defendants altered attorney access to inmates.  Attorneys' physical access to incarcerated clients was limited by the Defendants because of the COVID concerns.

27.     Plaintiffs access to their clients was impacted and diminished by the Defendants' COVID policies.

28.     In September of 2021, the San Mateo County Board of Supervisors entered into a written agreement with a privately held Florida Corporation called Smart Communications Holding, Inc. (hereinafter "Smart Communications") to provide inmate communications services for the Defendants' jails.  The Defendants have implemented the Agreement and installed Smart Communications' communication devices called SmartTablet™ in the Defendants' jails.

29.     The Agreement (hereinafter "**Agreement**") between Smart Communications and Defendant San Mateo County and implemented by the Defendant SMCSO will be more fully described hereinafter.

30.     The **Agreement** is attached hereto and marked as Exhibit 1.  The **Agreement** includes 9 pages of contract terms and the signature page, an Exhibit A which is 7 pages long and identifies the **Agreement's** services, a one page Exhibit B which sets the rates and fees, and a final "Attachment 1" entitled "Assurance of Compliance with Section 504 of the Rehabilitation Act of 1973, as amended."

31.     Under the **Agreement** "Smart Communications" is to provide communications services for inmates of the Defendants' jails through the use of among other things, electronic messaging services, video visitation, and digitized transmitted electronic mail from scanned paper mail by use of the Smart Communication SmartTablets™.

32.     Exhibit A to the **Agreement** states that "Smart Communications" will provide wireless correctional grade tablets to the SMCSO for use by the inmates in the San Mateo County Jails.  The device is called the "SmartTablet™".  The "SmartTablet™" allows an inmate user to access the "Smart Network."  The "Smart Network" is a closed network.  The "Smart Network" allows for access to digital electronic messages (they are like emails) scanned/digitized paper mail, grievance forms, medical requests, and access to a "Smart Communications" network law library.  Exhibit A to the **Agreement** contains several subsections.

33.     The focus of this lawsuit relates to two subsections of Exhibit A to the **Agreement**, i.e., Subsection C of Exhibit A to the **Agreement** entitled "Smartinmate™ Electronic Messaging", and Subsection E of Exhibit A to the **Agreement** entitled "Patented MailGuard Legal™ System."

34. Regarding Subsection C "Smartinmate™ Electronic Messaging" this lawsuit seeks an Order requiring the Defendants to implement the attorney-client blocking feature on the Smartinmate™ Electronic Messaging System or to implement adequate warnings to attorney users that the electronic messages can be read and are read by virtually any one of the Defendants' correctional officers, deputy sheriffs and other employees of the Defendants and by investigators of the San Mateo County District Attorney's Office as well as other members of law enforcement. Currently there is no meaningful adequate warning. Defendants do not advise the attorney that Defendants and law enforcement also download the messages, copy the messages, and forward the messages to other law enforcement agencies and to the San Mateo County District Attorney's Office. In addition, the Defendants do not warn that a user does not have the ability to delete an electronic Smart mail message.

35. Regarding Subsection E, the "Patented MailGuard Legal™ System" this lawsuit seeks an Order blocking the Defendants from scanning paper attorney client communications and transmitting the communications electronically to the inmate clients.

36. Plaintiffs have each received Smart Mail electronic messages "emails" from clients incarcerated in the Defendants' jails. The emails originated from Smart Communications SmartTablets™ by inmates incarcerated in Defendants' jails.

37. The electronic message appears to be an email. Each Plaintiff responded to the Smart Mail electronic message email by signing up for the Smart Mail system.

38. The Defendants' Smart Mail system seemingly appears private. In reality it is not private. The electronic message emails are surveilled, read, downloaded, forwarded, and retained by Defendants. The emails are used by law enforcement to further prosecutorial goals by Defendants.

39. Defendants' Smart Mail electronic messenger system is designed to appear private and convenient. The Plaintiffs did not know their communications were being surveilled.

40. None of the Plaintiffs were adequately warned that the seemingly private emails were and are surveilled, copied, downloaded, forwarded, and saved by Defendants for law

1    enforcement use for perpetuity, as well as "owned" by Smart Communications for their use for

2    perpetuity.

3        41.    Plaintiffs learned of the extensive surveillance by Defendants and law enforcement

4    agents through discovery in various criminal cases in which they represent incarcerated clients in

5    Defendants' jails by requesting Smart Mail electronic messages of their incarcerated clients.

6        42.    Plaintiffs learned of the extensive surveillance when their Smart Mail

7    communications were used against their clients in their respective criminal cases by Defendants.

8        43.    Plaintiffs initiated an investigation into the SMCSO and Smart Jail Mail to learn

9    the extent of their subterfuge and the extent of Defendants surveillance of communications with

10   their clients incarcerated in the Defendants' jails.

11       44.    The Smart Mail sign-up process does not contain warnings commensurate with the

12   level of law enforcement surveillance.  The sign-up process is either purposefully deceptive or

13   negligently deceptive.  It is nevertheless misleading and deceptive because the system is not

14   private at all, and there are not adequate warnings to attorneys.

15       45.    Each Plaintiff attorney was "invited" to respond to an email from a client in

16   custody in Defendants' jails.  In order to reply to the email Plaintiffs had to create a Smart Mail

17   account.

18       46.    To create the account each Plaintiff clicked "Agree" on the Terms of Service icon.

19   The Terms of Service do not appear nor does a Privacy Policy appear.  There is no warning or

20   mention that the electronic message emails are not protected by the attorney-client privilege and

21   are not confidential.

22       47.    To create a Smart Mail account the Plaintiffs completed the sign-up process by

23   providing their names, addresses, dates of birth, sex, and email addresses.

24       48.    The Smart Communications logo is a shield.  Each Plaintiff created a username

25   and a password.  Each Plaintiff was under the impression that a secure account had been created.

26

27

28

49.     Smart Mail thereafter processed the information provide by Plaintiffs and sent a link to each Plaintiff activating their account.  Plaintiffs thereafter could and did communicate using the Defendants' Smart jail mail digital electronic email link communication system.

50.     Plaintiffs bring this lawsuit in their own stead and on behalf of all the other attorneys who have registered and used the Smart Mail System operated by the Defendants.

51.     The Defendants' jails have approximately 1,000-1,200 people in custody.  Each and every incarcerated individual whether a pretrial detainee or a sentenced prisoner's primary means of communication is now the Defendants' Smart jail mail Tablet.

52.     Incarcerated people in the Defendants' jails may not receive U.S. Mail except legal mail.  But as will be explained hereinafter the Defendants are implementing the Smart Mail patented legal mail system to electronically digitize attorney-client paper mail and eliminate all paper mail delivered by the U.S. Postal Service to inmates.

53.     Virtually every pretrial detainee in the Defendants' jails is represented by an attorney.  The majority of the attorneys are court appointed to represent the incarcerated pretrial detainee because the person lacks the money to hire an attorney and/or to post bail.

54.     San Mateo County does not have a public defender's office.  San Mateo County has a contract with the San Mateo County Bar Association which operates the Private Defender Program.  The Private Defender Program Administration provides indigent defendants with an attorney from a list of defense attorneys in the Private Defender Program.

55.     Virtually every lawyer who has represented a person and/or who is representing a person who is incarcerated in Defendants' jails has been "invited" to correspond with their inmate client using the Smart Jail Mail electronic messaging system.  This is at least several hundred if not a thousand lawyers.

56.     Hundreds of attorneys like Plaintiffs have registered with Smart Mail providing their names, addresses, dates of birth, sex, and locations to Smart Mail and communicated with their respective clients using the Smart Mail electronic mail system while being unaware that the communications are surveilled by the Defendants and law enforcement and under the terms of use are deemed the property of Smart Mail.

57. To use the "Smart Communications" Smartinmate™ Electronic Messaging System, inmates use the "SmartTablet™." (*See* Subsection of Exhibit A to the **Agreement**). Inmates are required to click on a terms of use icon and click "approve." The terms of use description for inmates do not include informative monitoring warnings.

58. To utilize the Smart Mail electronic messaging system the inmate signs-up electronically and becomes a "member" using the "SmartTablet™." There is no charge to sign-up for an electronic messaging account. The inmate then sends an invitation to an outside person to sign-up electronically to also become a "member."

59. When the outside person receives an invitation from an inmate the outside person must sign-up for an account. The outside person must electronically provide their name, telephone number, email address, physical address, and date of birth. After that information is provided to "Smart Communications" the user then creates a username and password for the "Smart Communications" Smartinmate™ Electronic Messaging System. Upon providing all of that information electronically the person clicks on the agree to the terms of use icon and then becomes a member of the Smartinmate™ Electronic Messaging System. The terms of use description do not include a warning that messages to and from attorneys are monitored.

60. The sign in process looks very much like signing into an email account. Once the outside member has established a username and password and entered into the Smartinmate™ Electronic Messaging System they can communicate with other members, i.e., inmates incarcerated in the Defendants' jails.

61. Once the member and the inmate are connected into the Smartinmate™ Electronic Messaging System "members" must buy "credits" from "Smart Communications." A major credit card or debit card must be used to purchase "credits." Message credits are sold in increments of fifty cents with a minimum purchase of 10 credits, i.e., five dollars is the minimum purchase. Each Smartinmate™ Electronic Message costs fifty cents.

/ / /

/ / /

/ / /

62.     The "Smart Communications" website contains the following post:

"When you connect with an incarcerated individual in one of the
correctional facilities, that provides service to those in their custody,
we may share information with the correctional facility, including
personal information, partial financial information (excluding your full
credit card number and social security number) and the content of any
data about any correspondence, photos or other materials that you send
to the incarcerated individual. **Those who have been screened and
approved for professional accounts, i.e., attorneys, are exempt
from having their information content shared with correctional
facilities to maintain attorney-client privilege.**"[1]

63.     Under the terms of the **Agreement** the Defendants have free access to all inmates'
Smartinmate™ Electronic Messages.  Virtually any of Defendants' employees can access any
inmate's Smartinmate™ Electronic messages at any time without any notice to the inmate or the
outside other party. The format of a Smartinmate™ Electronic message is virtually identical to
traditional email.

64.     "Smart Communications" provides Defendants with word search capacity to
search all Smartinmate™ Electronic Messages and/or a particular inmate's electronic messages
by a word search.  "Smart Communications" also provides Defendants with a messaging alert
feature meaning anytime an inmate sends or receives a Smartinmate™ electronic message
including messages between attorneys and inmate clients, Defendants can be notified.

65.     The "Smart Communications" Smartinmate™ Electronic Messaging System
contains a feature which blocks attorney-client communications from view of law enforcement.
(*See* Paragraph 62).

66.     The Defendants refuse to implement and/or permit "Smart Communications" to
implement the attorney-client blocking feature in the Smartinmate™ Electronic Messaging
System.

67.     Since implementation of the "Smart Communications" Smartinmate™ Electronic
Messaging System Defendants review all inmate Smartinmate™ electronic messages including
attorney-client messages.  Defendants also supply the contents of the electronic messages and/or

---

[1] *See* https://www.smartjailmail.com/privacy-policy.cfm @  "Correctional Facilities."

1   the actual messages including attorney-client messages to Prosecutors, i.e., Deputy District

2   Attorneys working in the San Mateo District Attorney's Office for use against inmates.

3   Prosecutors may and do request and obtain inmates' Smartinmate™ electronic messages from the

4   Defendants without notice to the inmates or the outside party.

5        68.    The possibility that Prosecutors could use inmates' Smart Messages against

6   inmates in criminal proceedings is not merely theoretical.  Recently, in *People of the State of*

7   *California vs. Randolph Haldeman*, Case No. 19-SF-010689-A, SMCSO personnel, both

8   correctional officers and detectives, reviewed Defendant Haldeman's Smart Mail electronic

9   messages on the "Smart Communications" Smartinmate™ Electronic Messaging System,

10   including communications marked as attorney-client privilege between the inmate Defendant's

11   criminal defense lawyer and also the inmate's family law lawyer and bankruptcy lawyer.

12   Defendants' employees print Smart Mail messages and provide the messages to the San Mateo

13   County District Attorney's Office for use in the prosecution of the inmate defendants.

14        69.    The Defendants refuse to post adequate warning notices to attorneys about the

15   Defendants' surveillance capacity of the communication system.

16        70.    There is no cost to Defendants to implement the attorney-client blocking feature of

17   the Smart Mail Electronic Messaging System.

18        71.    The Defendants refuse to implement the attorney-client blocking feature.

19   Defendants' current policy and practice infringes upon Plaintiffs and other attorneys' ability to

20   communicate with their clients housed in Defendants' jails, and on Plaintiffs First Amendment

21   Rights.

22        72.    Electronic communication, i.e., email and electronic messaging, has become the

23   21st century means of communication. There are many reasons why. It is faster. It is cheaper. It is

24   more environmentally friendly.

25        73.    Since the advent of the pandemic, electronic communication has increased. For

26   some of the pandemic the Plaintiff Attorneys barely meet in person in the San Mateo County Jails

27   with their clients.  Attorneys and in custody clients were forced to resort to video conferencing,

28   telephone communications, and electronic messaging.  The Defendants do allow blocking of

attorney-client phone calls and attorney-client video visitation to protect the privileged nature of the communications.

74.     The "Smart Communications" system permits for blocking of video communications between attorneys and clients.  The Defendants permit the use of the blocking function for attorney-client video visitation and do in fact block attorney-client video visitation. The Defendants' telephone system permits blocking attorney-client telephone calls.  The Defendants permit blocking attorney-client telephone calls and do in fact block attorney-client phone calls.

75.     There is no rational reason why the Defendants refuse to implement the attorney-client blocking feature in Smartinmate™ Electronic Messaging System. Again, there is a means to block attorney-client electronic messages from law enforcement view within the "Smart Communications" Smartinmate™ Electronic Messaging System to protect the attorney-client privilege and the confidentiality to attorney-client communications.

76.     The Defendants' policies and practices of monitoring all Smartinmate™ Electronic Messaging System makes it virtually impossible for inmates to communicate confidentially with their defense attorneys and vice versa.  This places a burden on the lawyers' and the inmates' Constitutional Rights, including their Sixth Amendment right to effective assistance of counsel and their First Amendment right to freedom of expression.  The Defendants' policies and practices also implicate due process because it puts Plaintiffs and their clients at a distinct disadvantage compared to law enforcement and County Prosecutors, who do not have to reveal the contents of their email communications to their litigation advisories.

77.     As a result of the Defendants' policies and practices of refusing attorney-client message blocking in the Smartinmate™ Electronic Messaging System inmates who wish to avoid government review of their attorney-client communications must rely on slower and costlier forms of communication such as postal mail and in-person visits.  It can take two or more weeks for inmates to receive postal mail. Unmonitored calls are problematic because there is no predictability as to when an inmate can get access to a phone to call out.  Attorneys cannot place calls to inmates.  The same challenges apply to video visitation.  Additionally, correspondence to

schedule calls and video visitation must sometimes be done via postal mail and/or email and they are themselves time-consuming to arrange. For an in-person visit, it can take Plaintiffs Attorneys hours in travel, processing and waiting before they can speak with their in custody clients.

78. Reliance on these other methods of communication is particularly onerous given that the majority of inmates in the San Mateo County Jail are represented by publicly funded counsel who already struggle with heavy caseloads, limited resources, and multiple attorney-client obligations. Consequently, the additional time and expense related to client communication to avoid Smartinmate™ Electronic Messaging impacts Court appointed lawyers and restricts the affordability of privately retained counsel.

79. This lawsuit is necessary to compel Defendants to implement the attorney-client blocking function in the Smartinmate™ Electronic Messaging System to stop Defendants' invasion of attorney client communications and/or to provide adequate warnings about the onerous and invasive level of surveillance of Smart Mail electronic messages.

<div align="center">

**PART TWO**

**STOPPING SMCSO'S IMPLEMENTATION OF THE PATENTED MAILGUARD LEGAL™ SYSTEM**

</div>

80. This lawsuit also seeks to halt the Defendants implementation of the "Smart Communications" SmartMail Patented MailGuard Legal™ System. *See* Subsection E of Exhibit A to the **Agreement**. The Patented MailGuard Legal™ System provides that mailed legal mail will be opened in front of the inmate. The paper mail will then be scanned and transmitted electronically to the inmate through the Smartinmate™ Electronic Messaging System.

81. Given that the Defendants refuse to implement the blocking feature of the Smartinmate™ Electronic Messaging System, implementation of the MailGuard Legal™ System would essentially eliminate any semblance of attorney-client privilege. This lawsuit prays for an Order prohibiting implementation of the SmartMail Patented MailGuard Legal™ System.

82. The Plaintiff Attorneys have multiple in custody clients. The Plaintiff Attorneys mail letters, reports, and other confidential materials to their clients. Many letters include legal

advice, strategy, discussions, answers to legal questions and proposed pleadings, among other things. Other lawyers also mail documents to their clients incarcerated in Defendants' jails.

83. Although incarceration necessarily involves a loss of privacy and some liberty rights, it is well established that people in jails retain First Amendment rights and, in particular, the right to counsel. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987).

84. The need for confidentiality of attorney-client communications is particularly acute in a custodial setting. *See, e.g., Lanza v. New York*, 370 U.S. 139 (1962) ("[Even] in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection . . ." (citations omitted)).

85. The U.S. Court of Appeals for the Third Circuit has held that "opening properly marked incoming attorney of court mail outside a prisoner's presence, or reading such mail, infringes the Constitution." *Bieregu v. Reno*, 59 F.3d 1445, 1450-51 (3d Cir. 1995) (citing decisions from other Courts of Appeals). The Court held that the failure to safeguard attorney-client confidentiality "chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Id.* at 1452. Indeed, the U.S. Supreme Court has ruled that the *only* way to ensure the confidentiality of legal mail to incarcerated people is to require that prison officials open legal mail only in the presence of the individual to whom it is addressed. *Wolfe v. McDonnell*, 418 U.S. 539, 576-77, 94 S. Ct. 2963, 2984-85 (1974).

86. Until recently, the Defendants followed a policy for legal mail ("former policy") consistent with these constitutional requirements. Recently, Defendants' jail staff have begun opening legal mail outside the presence of the receiving inmate. Defendants' staff have told inmates they are going to start scanning legal mail.

87. The "Smart Communications" Patented MailGuard Legal™ System is rife with Constitutional deficiencies. Under the "plan" legal mail is to be scanned into a system that currently has no attorney-client blocking function. The original attorney-client privileged letter or documents are taken from the inmate and stored outside the presence of the inmate in some

unknown place.  This eviscerates the assurance of confidentiality that the First Amendment requires.

88.    The Patented MailGuard Legal™ System as set forth in Subsection E of Exhibit 1 to the **Agreement** threatens the Plaintiffs' obligation to communicate with their clients in a manner that prevents disclosure of confidentiality communications to unauthorized recipients including SMCSO corrections officers, employees of "Smart Communications" and others.

89.    The Patented MailGuard Legal™ System threatens the Plaintiffs' Attorneys duty to communicate confidentially with their clients.  A lawyer cannot meaningfully represent his/her client and a client cannot make informed decisions unless the lawyer and the client can freely communicate.

90.    The Patented MailGuard Legal™ System will interfere with attorney-client communications and implicates other professional responsibilities including the lawyers' duty to abide by the client's decisions regarding representation, provide competent representation and to act with diligence and promptness in representing a client.

91.    The Patented MailGuard Legal™ System is not rationally related to a legitimate penological interest and the policy is illegal on its face.

92.    This lawsuit seeks to prohibit Defendants from scanning attorney client paper mail communications and transmitting them electronically to the inmate client recipient by way of the Patented MailGuard Legal™ System in the Defendants' jails.

93.    The mere fact that the original legal mail has been opened and is being stored outside the presence of the incarcerated individual eviscerates the assurances of confidentiality that the First Amendment requires.  Further, any page-by-page inspection of legal mail would be equivalent to skimming or reading that mail, which is itself illegal.

94.    Plaintiffs have been advised by experts in professional ethics that the new policy raises sufficient concerns that they should no longer communicate with their clients by mail under this new policy.

95.    The New Legal Mail Policy threatens lawyers' obligation to communicate with their clients in a manner that prevents inadvertent disclosure of confidential client information to

1    unauthorized recipients, a group that obviously includes corrections officers and other Defendants

2    staff.  Cal. State Bar Rule 3-100.

3         96.     The New Legal Mail Policy also threatens lawyers' duty of communication with

4    their clients. Cal. State Bar Rule 3-100.  A lawyer cannot meaningfully represent their client, and

5    the client cannot make informed decisions regarding the course of the representation, unless the

6    two are able to communicate freely and openly.

7         97.     The Defendants' New Legal Mail Policy's interference with attorney-client

8    communications implicates other professional responsibilities, including a lawyer's obligation to

9    "abide by a client's decisions concerning the objectives of representation." Cal. State Bar Rule 3-

10    100 to provide "competent representation to a client," and to "act with reasonable diligence and

11    promptness in representing a client".  Cal. State Bar Rule 3-100.

12         98.     Plaintiffs' failure to heed these professional obligations would subject themselves

13    to disciplinary proceedings and professional sanctions.  Cal. State Bar Rule 3-100.  ("Failure to

14    comply with an obligation or prohibition imposed by a Rule is a basis for invoking the

15    disciplinary process.").

16         99.     Given the significant professional concerns created by the Defendants' New Legal

17    Mail Policy, Plaintiffs may have to cease sending privileged communications to clients and

18    prospective clients incarcerated within Defendants' jails.

19         100.     Defendants are implementing the new policy.  Plaintiffs will be unable to send

20    meaningful, substantive responses to a scope of inmates who have requested legal assistance and

21    advice.

22         101.     The new policy will adversely affecting Plaintiffs' and all attorneys' ability to

23    represent clients in ongoing litigation.

24         **DEFENDANTS' NEW LEGAL MAIL POLICY VIOLATES**

25         **PLAINTIFFS' FIRST AMENDMENT RIGHTS**

26         102.     There is no valid, rational connection between the risk being addressed (which

27    does not involve legitimate legal mail at all) and the wholesale changes Defendants are now

28    implementing.

103.    The New Legal Mail Policy will effectively prevent Plaintiffs and their clients from using the mail to engage in confidential communications.

104.    Given the limited access and means by which attorneys and their clients in Defendants' jails can speak by telephone, and the difficulties associated with in-person meetings, communication by mail is essential.

105.    Plaintiffs do not have the staff and resources necessary to arrange for and attend in-person visits for all such communications.  Often, Plaintiffs must travel hours and incur substantial additional costs for in-person visits, which necessarily limits what these attorneys can do for these and other clients.

106.    With respect to legal mail, the burden on First Amendment Rights and the attorney-client privilege is not reasonably related to the Defendants' stated interest or any legitimate penological interest.

107.    As a direct and proximate result of Defendants' New Legal Mail Policy, Plaintiffs and other lawyers will be harmed.  The new policy chills the exercise of the Plaintiffs' and their staffs' First Amendment Rights.  It substantially impedes the Plaintiffs' ability to zealously and competently represent their clients.

108.    The Plaintiffs will also have to incur extra costs in both time and money as a result of having to make personal visits with their clients in Defendants' jails in lieu of mail communications.

109.    As a direct and proximate cause of Defendants' New Legal Mail Policy, the Plaintiffs' clients will be harmed.  In particular, the policy infringes upon and limits their exercise of the First Amendment Rights to communicate confidentially with their attorneys.

110.    Unless the Court enjoins, preliminarily and permanently thereafter, Defendants from implementing the new policy, the First Amendment Rights of Plaintiffs and other lawyers, their employees, and their clients and prospective clients will be abridged.

## **COUNT I – VIOLATION OF FIRST AMENDMENT RIGHTS**

111.    Plaintiffs incorporate by reference paragraphs 1 through 110 of this Complaint as though set forth fully herein.

112.   The First Amendment, as incorporated in the Fourteenth, prohibits sates from "abridging the freedom of speech." U.S. Const. Amend. I.

113.   Plaintiffs have a protected First Amendment right to free speech. *See, e.g., Hirschkop v. Snead*, 594 F.2d 356, 366 (4th Cir. 1979); *Kuchka v. Kile*, 634 F. Supp. 502, 511 (M.D. Pa. 1985) (citing *Hirschkop*).   Implicit in this right is the right of attorneys to communicate with their clients, including those that are incarcerated. *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (those who wish to communicate with prisoners "have a First Amendment interest in access to prisoners"); *Procunier v. Martinez*, 416 U.S. 396, 408-09, 94 S. Ct. 1800 (1974) (both incarcerated people and those with whom they correspond have First Amendment Rights that can be infringed by unjustified government interference).

114.   Further, the Plaintiffs generally have a duty to communicate with their clients and to protect the confidentiality of materials protected by the attorney-client privilege. *See,* Cal. State Bar Rule 3-100 and Cal. Business and Professions Code 6068(e) Rule 1.6.   The New Legal Mail Policy and the Smart Mail digital electronic communication system without the attorney-client block function interfere with Plaintiffs' and other lawyers' duty to communicate with their clients, their duty to protect the confidentiality of client communications, and their duty to advocate zealously on behalf of their clients currently incarcerated in Defendants' jails.

115.   People who are incarcerated "do not forfeit their First Amendment right to use of the mails." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995).

116.   A pattern and practice of opening legal mail outside the presence of the addressee interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the incarcerated individual's right to freedom of speech. *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).   Any such practice "deprives the expression of confidentiality and chills the inmates' protected expressions, *regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications*." *Id.* (emphasis added).   "[T]he only way to ensure that mail is not read when opened . . . is to require that it be done in the presence of the inmate to whom it is addressed." *Bieregu*, 59 F.3d at 1456 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-577 (1974)).

117. The proposed New Legal Mail Policy and refusal to use the attorney-client blocking function in the Smart Mail Messaging System is not rationally related to a legitimate penological interest and are therefore void on their face.

118. Unless injunctive relief is granted, the First Amendment Rights of Plaintiffs and other attorneys, their employees, their clients, and their prospective clients, will continue to be infringed upon and chilled, and attorney-client communications will lose their confidential, privileged character.

<div align="center"><b><u>PRAYER FOR RELIEF</u></b></div>

WHEREFORE, the Attorney Plaintiffs, on behalf of themselves, their employees, and their current and prospective inmate clients, and other attorneys and their current and prospective clients seek judgment in their favor and against Defendants, and in particular seek:

A. A Declaration that Defendants' actions violate their Constitutional Rights including but not limited to their First Amendment Rights, and the rights of their clients;

B. 1. An injunction – preliminary and permanent thereafter compelling the SMCSO to implement the attorney-client blocking function in the "Smart Communications" Smartinmate™ Electronic Messaging System; or providing warnings that the current system has NO privacy and all communications are subject to surveillance, being read, copied, preserved and distributed to all law enforcement; and (2) an injunction- preliminary and permanent enjoining Defendants from implementing the "Smart Communications" Patented MailGuard Legal™ System;

C. Costs, interest, and attorneys' fees; and

D. Any other relief deemed just and appropriate.

Dated: September 1, 2022    **LAW OFFICE OF PAULA CANNY**

_____/s/_____
PAULA CANNY
Attorney for Plaintiffs,
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO

Dated:  September 1, 2022          **LAW OFFICES OF ARA JABAGCHOURIAN, P.C.**


_____/s/_____
ARA JABAGCHOURIAN
Attorney for Plaintiffs
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO


Dated:  September 1, 2022          **LAW OFFICE OF RANDALL KNOX**


_____/s/_____
RANDALL KNOX
Attorney for Plaintiffs
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO

1

2                                    **VERIFICATION**

3          I, CURTIS L. BRIGGS, am a Plaintiff in this case, and I swear under the penalty of

4   perjury pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of

5   my knowledge, information and belief.

6

7

8   Dated:  September 1, 2022                    _____/s/_____
                                                        CURTIS L BRIGGS
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, ROBERT CANNY, am a Plaintiff in this case, and I swear under the penalty of perjury pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of my knowledge, information and belief.

Dated: September 1, 2022 _____/s/_____

ROBERT CANNY

**VERIFICATION**

I, MATTHEW MURILLO, am a Plaintiff in this case, and I swear under the penalty of perjury pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of my knowledge, information and belief.

Dated:  September 1, 2022          _____/s/_____
                            MATTHEW MURILLO

# EXHIBIT 1

## Agreement Between
## The County of San Mateo and Smart
## Communications Holding, Inc.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

Agreement No. 30000-22-R 078425

# AGREEMENT BETWEEN THE COUNTY OF SAN MATEO AND SMART COMMUNICATIONS HOLDING, INC.

This Agreement is entered into this 01 day of September, 2021, by and between the County of San Mateo, a political subdivision of the state of California, hereinafter called "County," and Smart Communications Holding, Inc, hereinafter called "Contractor."

\*          \*          \*

Whereas, pursuant to Section 31000 of the California Government Code, County may contract with independent contractors for the furnishing of such services to or for County or any Department thereof; and

Whereas, it is necessary and desirable that Contractor be retained for the provision of Inmate Tablet and Video Visitation Services and Postal Mail Elimination System Services within the Maguire Correctional Facility and the Maple Street Correctional Center.

**Now, therefore, it is agreed by the parties to this Agreement as follows:**

### 1.    Exhibits and Attachments

The following exhibits and attachments are attached to this Agreement and incorporated into this Agreement by this reference:

> Exhibit A—Services
> Exhibit B—Rates & Fees
> Attachment I—§ 504 Compliance

### 2.    Services to be performed by Contractor

In consideration of the County granting Contractor the exclusive right and license to install, maintain, and operate inmate communications services and related hardware and software and to provide associated services within the identified County Correctional Centers, Contractor shall perform services for County in accordance with the terms, conditions, and specifications set forth in this Agreement and in Exhibit A. In no event shall County be required to provide payment of any type to Contractor for performance of these services.

### 3.    Term

Subject to compliance with all terms and conditions, the term of this Agreement shall be from **September 01, 2021**, through **August 31, 2024**. At its sole discretion, County may exercise the option to extend this agreement for an additional two one (1) year renewals thereafter, under all the same contract provisions herein, by written notice to Contractor by County, or no later than thirty (30) days prior to the termination of the original three-year term or first one-year renewal term.

### 4.    Termination

This Agreement may be terminated by Contractor or by the County at any time without a requirement of good cause upon ninety (90) days' advance written notice to the other party.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

County may terminate this Agreement or a portion of the services referenced in the Attachments and Exhibits based upon the unavailability of Federal, State, or County funds by providing written notice to Contractor as soon as is reasonably possible after County learns of said unavailability of outside funding.

County may terminate this Agreement for cause. In order to terminate for cause, County must first give Contractor notice of the alleged breach. Contractor shall have five business days after receipt of such notice to respond and a total of ten calendar days after receipt of such notice to cure the alleged breach. If Contractor fails to cure the breach within this period, County may immediately terminate this Agreement without further action. The option available in this paragraph is separate from the ability to terminate without cause with appropriate notice described above. In the event that County provides notice of an alleged breach pursuant to this section, County may, in extreme circumstances, immediately suspend performance of services and payment under this Agreement pending the resolution of the process described in this paragraph. County has sole discretion to determine what constitutes an extreme circumstance for purposes of this paragraph, and County shall use reasonable judgment in making that determination.

5. **Contract Materials**

At the end of this Agreement, or in the event of termination, all finished or unfinished documents, data, studies, maps, photographs, reports, and other written materials (collectively referred to as "contract materials") prepared by Contractor under this Agreement shall become the property of County and shall be promptly delivered to County. Upon termination, Contractor may make and retain a copy of such contract materials if permitted by law.

6. **Relationship of Parties**

Contractor agrees and understands that the work/services performed under this Agreement are performed as an independent contractor and not as an employee of County and that neither Contractor nor its employees acquire any of the rights, privileges, powers, or advantages of County employees.

7. **Hold Harmless**

   a. **General Hold Harmless**

Contractor shall indemnify and save harmless County and its officers, agents, employees, and servants from all claims, suits, or actions of every name, kind, and description resulting from this Agreement, the performance of any work or services required of Contractor under this Agreement, or payments made pursuant to this Agreement brought for, or on account of, any of the following:

   (A) injuries to or death of any person, including Contractor or its employees/officers/agents;

   (B) damage to any property of any kind whatsoever and to whomsoever belonging;

   (C) any sanctions, penalties, or claims of damages resulting from Contractor's failure to comply, if applicable, with the requirements set forth in the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and all Federal regulations promulgated thereunder, as amended; or

   (D) any other loss or cost, including but not limited to that caused by the concurrent active or passive negligence of County and/or its officers, agents, employees, or servants. However, Contractor's duty to indemnify and save harmless under this Section shall not apply to injuries or damage for which County has been found in a court of competent jurisdiction to be solely liable by reason of its own negligence or willful misconduct.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

The duty of Contractor to indemnify and save harmless as set forth by this Section shall include the duty to defend as set forth in Section 2778 of the California Civil Code.

### b. Intellectual Property Indemnification

Contractor hereby certifies that it owns, controls, and/or licenses and retains all right, title, and/or interest in and to any intellectual property it uses in relation to this Agreement, including the design, look, feel, features, source code, content, and/or other technology relating to any part of the services it provides under this Agreement and including all related patents, inventions, trademarks, and copyrights, all applications therefor, and all trade names, service marks, know how, and trade secrets (collectively referred to as "IP Rights") except as otherwise noted by this Agreement.

Contractor warrants that the services it provides under this Agreement do not infringe, violate, trespass, or constitute the unauthorized use or misappropriation of any IP Rights of any third party. Contractor shall defend, indemnify, and hold harmless County from and against all liabilities, costs, damages, losses, and expenses (including reasonable attorney fees) arising out of or related to any claim by a third party that the services provided under this Agreement infringe or violate any third-party's IP Rights provided any such right is enforceable in the United States. Contractor's duty to defend, indemnify, and hold harmless under this Section applies only provided that: (a) County notifies Contractor promptly in writing of any notice of any such third-party claim; (b) County cooperates with Contractor, at Contractor's expense, in all reasonable respects in connection with the investigation and defense of any such third-party claim; (c) Contractor retains sole control of the defense of any action on any such claim and all negotiations for its settlement or compromise (provided Contractor shall not have the right to settle any criminal action, suit, or proceeding without County's prior written consent, not to be unreasonably withheld, and provided further that any settlement permitted under this Section shall not impose any financial or other obligation on County, impair any right of County, or contain any stipulation, admission, or acknowledgement of wrongdoing on the part of County without County's prior written consent, not to be unreasonably withheld); and (d) should services under this Agreement become, or in Contractor's opinion be likely to become, the subject of such a claim, or in the event such a third party claim or threatened claim causes County's reasonable use of the services under this Agreement to be seriously endangered or disrupted, Contractor shall, at Contractor's option and expense, either: (i) procure for County the right to continue using the services without infringement or (ii) replace or modify the services so that they become non-infringing but remain functionally equivalent.

Notwithstanding anything in this Section to the contrary, Contractor will have no obligation or liability to County under this Section to the extent any otherwise covered claim is based upon: (a) any aspects of the services under this Agreement which have been modified by or for County (other than modification performed by, or at the direction of, Contractor) in such a way as to cause the alleged infringement at issue; and/or (b) any aspects of the services under this Agreement which have been used by County in a manner prohibited by this Agreement.

The duty of Contractor to indemnify and save harmless as set forth by this Section shall include the duty to defend as set forth in Section 2778 of the California Civil Code.

### 8.   Assignability and Subcontracting

Contractor shall not assign this Agreement or any portion of it to a third party or subcontract with a third party to provide services required by Contractor under this Agreement without the prior written consent of County. Any such assignment or subcontract without County's prior written consent shall give County the right to automatically and immediately terminate this Agreement without penalty or advance notice.

### 9.   Insurance

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

### a. General Requirements

Contractor shall not commence work or be required to commence work under this Agreement unless and until all insurance required under this Section has been obtained and such insurance has been approved by County's Risk Management, and Contractor shall use diligence to obtain such insurance and to obtain such approval. Contractor shall furnish County with certificates of insurance evidencing the required coverage, and there shall be a specific contractual liability endorsement extending Contractor's coverage to include the contractual liability assumed by Contractor pursuant to this Agreement. These certificates shall specify or be endorsed to provide that thirty (30) days' notice must be given, in writing, to County of any pending change in the limits of liability or of any cancellation or modification of the policy.

### b. Workers' Compensation and Employer's Liability Insurance

Contractor shall have in effect during the entire term of this Agreement workers' compensation and employer's liability insurance providing full statutory coverage. In signing this Agreement, Contractor certifies, as required by Section 1861 of the California Labor Code, that (a) it is aware of the provisions of Section 3700 of the California Labor Code, which require every employer to be insured against liability for workers' compensation or to undertake self-insurance in accordance with the provisions of the Labor Code, and (b) it will comply with such provisions before commencing the performance of work under this Agreement.

### c. Liability Insurance

Contractor shall take out and maintain during the term of this Agreement such bodily injury liability and property damage liability insurance as shall protect Contractor and all of its employees/officers/agents while performing work covered by this Agreement from any and all claims for damages for bodily injury, including accidental death, as well as any and all claims for property damage which may arise from Contractor's operations under this Agreement, whether such operations be by Contractor, any subcontractor, anyone directly or indirectly employed by either of them, or an agent of either of them. Such insurance shall be combined single limit bodily injury and property damage for each occurrence and shall not be less than the amounts specified below:

      (a) Comprehensive General Liability...   $1,000,000

      (b) Motor Vehicle Liability Insurance...   $1,000,000

      (c) Professional Liability...................   $1,000,000

County and its officers, agents, employees, and servants shall be named as additional insured on any such policies of insurance, which shall also contain a provision that (a) the insurance afforded thereby to County and its officers, agents, employees, and servants shall be primary insurance to the full limits of liability of the policy and (b) if the County or its officers, employees, and servants have other insurance against the loss covered by such a policy, such other insurance shall be excess insurance only.

In the event of the breach of any provision of this Section, or in the event any notice is received which indicates any required insurance coverage will be diminished or canceled, County, at its option, may, notwithstanding any other provision of this Agreement to the contrary, immediately declare a material breach of this Agreement and suspend all further work and payment pursuant to this Agreement.

### 10. Compliance With Laws

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

All services to be performed by Contractor pursuant to this Agreement shall be performed in accordance with all applicable Federal, State, County, and municipal laws, ordinances, and regulations, including but not limited to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Federal Regulations promulgated thereunder, as amended (if applicable), the Business Associate requirements set forth in Attachment H (if attached), the Americans with Disabilities Act of 1990, as amended, and Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability in programs and activities receiving any Federal or County financial assistance. Such services shall also be performed in accordance with all applicable ordinances and regulations, including but not limited to appropriate licensure, certification regulations, provisions pertaining to confidentiality of records, and applicable quality assurance regulations. In the event of a conflict between the terms of this Agreement and any applicable State, Federal, County, or municipal law or regulation, the requirements of the applicable law or regulation will take precedence over the requirements set forth in this Agreement.

Further, Contractor certifies that it and all of its subcontractors will adhere to all applicable provisions of Chapter 4.106 of the San Mateo County Ordinance Code, which regulates the use of disposable food service ware. Accordingly, Contractor shall not use any non-recyclable plastic disposable food service ware when providing prepared food on property owned or leased by the County and instead shall use biodegradable, compostable, reusable, or recyclable plastic food service ware on property owned or leased by the County.

Contractor will timely and accurately complete, sign, and submit all necessary documentation of compliance.

### 11.   Non-Discrimination and Other Requirements

#### a.   General Non-discrimination

No person shall be denied any services provided pursuant to this Agreement (except as limited by the scope of services) on the grounds of race, color, national origin, ancestry, age, disability (physical or mental), sex, sexual orientation, gender identity, marital or domestic partner status, religion, political beliefs or affiliation, familial or parental status (including pregnancy), medical condition (cancer-related), military service, or genetic information.

#### b.   Equal Employment Opportunity

Contractor shall ensure equal employment opportunity based on objective standards of recruitment, classification, selection, promotion, compensation, performance evaluation, and management relations for all employees under this Agreement. Contractor's equal employment policies shall be made available to County upon request.

#### c.   Section 504 of the Rehabilitation Act of 1973

Contractor shall comply with Section 504 of the Rehabilitation Act of 1973, as amended, which provides that no otherwise qualified individual with a disability shall, solely by reason of a disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination in the performance of any services this Agreement. This Section applies only to contractors who are providing services to members of the public under this Agreement.

#### d.   Compliance with County's Equal Benefits Ordinance

Contractor shall comply with all laws relating to the provision of benefits to its employees and their spouses or domestic partners, including, but not limited to, such laws prohibiting discrimination in the provision of

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

such benefits on the basis that the spouse or domestic partner of the Contractor's employee is of the same or opposite sex as the employee.

### e. Discrimination Against Individuals with Disabilities

The nondiscrimination requirements of 41 C.F.R. 60-741.5(a) are incorporated into this Agreement as if fully set forth here, and Contractor and any subcontractor shall abide by the requirements of 41 C.F.R. 60–741.5(a). This regulation prohibits discrimination against qualified individuals on the basis of disability and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities.

### f. History of Discrimination

Contractor certifies that no finding of discrimination has been issued in the past 365 days against Contractor by the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or any other investigative entity. If any finding(s) of discrimination have been issued against Contractor within the past 365 days by the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or other investigative entity, Contractor shall provide County with a written explanation of the outcome(s) or remedy for the discrimination prior to execution of this Agreement. Failure to comply with this Section shall constitute a material breach of this Agreement and subjects the Agreement to immediate termination at the sole option of the County.

### g. Reporting: Violation of Non-discrimination Provisions

Contractor shall report to the County Manager the filing in any court or with any administrative agency of any complaint or allegation of discrimination on any of the bases prohibited by this Section of the Agreement or the Section titled "Compliance with Laws". Such duty shall include reporting of the filing of any and all charges with the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or any other entity charged with the investigation or adjudication of allegations covered by this subsection within 30 days of such filing, provided that within such 30 days such entity has not notified Contractor that such charges are dismissed or otherwise unfounded. Such notification shall include a general description of the circumstances involved and a general description of the kind of discrimination alleged (for example, gender-, sexual orientation-, religion-, or race-based discrimination).

Violation of the non-discrimination provisions of this Agreement shall be considered a breach of this Agreement and subject the Contractor to penalties, to be determined by the County Manager, including but not limited to the following:

   i.   termination of this Agreement;
   ii.   disqualification of the Contractor from being considered for or being awarded a County contract for a period of up to 3 years;
   iii.   liquidated damages of $2,500 per violation; and/or
   iv.   imposition of other appropriate contractual and civil remedies and sanctions, as determined by the County Manager.

To effectuate the provisions of this Section, the County Manager shall have the authority to offset all or any portion of the amount described in this Section against amounts due to Contractor under this Agreement or any other agreement between Contractor and County.

### h. Compliance with Living Wage Ordinance

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

As required by Chapter 2.88 of the San Mateo County Ordinance Code, Contractor certifies all contractor(s) and subcontractor(s) obligated under this contract shall fully comply with the provisions of the County of San Mateo Living Wage Ordinance, including, but not limited to, paying all Covered Employees the current Living Wage and providing notice to all Covered Employees and Subcontractors as required under the Ordinance.

## I. Compliance with Prison Rape Elimination Act Standards

Contractor shall comply with the Prison Rape Elimination Act (PREA) of 2003 (Federal Law 42. U.S.C. 15601 ET. Seq.), and applicable PREA Standards including but not limited to those regarding preventing, reporting, monitoring, and eradicating any form of sexual abuse within San Mateo County Sheriff's Office Facilities/Programs /Offices owned, operated or contracted. Failure to comply with PREA, including PREA Standards and related San Mateo County Sheriff's Office Policies, may result in termination of the contract.

## 12. Compliance with County Employee Jury Service Ordinance

Contractor shall comply with Chapter 2.85 of the County's Ordinance Code, which states that Contractor shall have and adhere to a written policy providing that its employees, to the extent they are full-time employees and live in San Mateo County, shall receive from the Contractor, on an annual basis, no fewer than five days of regular pay for jury service in San Mateo County, with jury pay being provided only for each day of actual jury service. The policy may provide that such employees deposit any fees received for such jury service with Contractor or that the Contractor may deduct from an employee's regular pay the fees received for jury service in San Mateo County. By signing this Agreement, Contractor certifies that it has and adheres to a policy consistent with Chapter 2.85. For purposes of this Section, if Contractor has no employees in San Mateo County, it is sufficient for Contractor to provide the following written statement to County: "For purposes of San Mateo County's jury service ordinance, Contractor certifies that it has no full-time employees who live in San Mateo County. To the extent that it hires any such employees during the term of its Agreement with San Mateo County, Contractor shall adopt a policy that complies with Chapter 2.85 of the County's Ordinance Code." The requirements of Chapter 2.85 do not apply if this Agreement's total value listed in the Section titled "Payments", is less than one-hundred thousand dollars ($100,000), but Contractor acknowledges that Chapter 2.85's requirements will apply if this Agreement is amended such that its total value meets or exceeds that threshold amount.

## 13. Retention of Records; Right to Monitor and Audit

(a) Contractor shall maintain all required records relating to services provided under this Agreement for three (3) years after County makes final payment and all other pending matters are closed, and Contractor shall be subject to the examination and/or audit by County, a Federal grantor agency, and the State of California.

(b) Contractor shall comply with all program and fiscal reporting requirements set forth by applicable Federal, State, and local agencies and as required by County.

(c) Contractor agrees upon reasonable notice to provide to County, to any Federal or State department having monitoring or review authority, to County's authorized representative, and/or to any of their respective audit agencies access to and the right to examine all records and documents necessary to determine compliance with relevant Federal, State, and local statutes, rules, and regulations, to determine compliance with this Agreement, and to evaluate the quality, appropriateness, and timeliness of services performed.

## 14. Merger Clause; Amendments

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

This Agreement, including the Exhibits and Attachments attached to this Agreement and incorporated by reference, constitutes the sole Agreement of the parties to this Agreement and correctly states the rights, duties, and obligations of each party as of this document's date. In the event that any term, condition, provision, requirement, or specification set forth in the body of this Agreement conflicts with or is inconsistent with any term, condition, provision, requirement, or specification in any Exhibit and/or Attachment to this Agreement, the provisions of the body of the Agreement shall prevail. Any prior agreement, promises, negotiations, or representations between the parties not expressly stated in this document are not binding. All subsequent modifications or amendments shall be in writing and signed by the parties.

### 15. Controlling Law; Venue

The validity of this Agreement and of its terms, the rights and duties of the parties under this Agreement, the interpretation of this Agreement, the performance of this Agreement, and any other dispute of any nature arising out of this Agreement shall be governed by the laws of the State of California without regard to its choice of law or conflict of law rules. Any dispute arising out of this Agreement shall be venued either in the San Mateo County Superior Court or in the United States District Court for the Northern District of California.

### 16. Notices

Any notice, request, demand, or other communication required or permitted under this Agreement shall be deemed to be properly given when both: (1) transmitted via email to the email address listed below; and (2) sent to the physical address listed below by either being deposited in the United States mail, postage prepaid, or deposited for overnight delivery, charges prepaid, with an established overnight courier that provides a tracking number showing confirmation of receipt.

In the case of County, to:

| | |
|---|---|
| Name/Title: | Veronica Ruiz, Management Analyst |
| Address: | 400 County Center, 3rd floor, Redwood City, CA 94063 |
| Telephone: | 650.363.7819 |
| Email: | VRuiz@smcgov.org |

In the case of Contractor, to:

| | |
|---|---|
| Name/Title: | Jonathan Logan, CEO |
| Address: | 10491 72nd Street, Siminole, FL 33777 |
| Telephone: | 888.253.5178 |
| Email: | Jon.Logan@smartcommunications.us |

### 17. Electronic Signature

Both County and Contractor wish to permit this Agreement and future documents relating to this Agreement to be digitally signed in accordance with California law and County's Electronic Signature Administrative Memo. Any party to this Agreement may revoke such agreement to permit electronic signatures at any time in relation to all future documents by providing notice pursuant to this Agreement.

### 18. Payment of Permits/Licenses

Contractor bears responsibility to obtain any license, permit, or approval required from any agency for work/services to be performed under this Agreement at Contractor's own expense prior to commencement of said work/services. Failure to do so will result in forfeit of any right to compensation under this Agreement.

\* \* \*

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

In witness of and in agreement with this Agreement's terms, the parties, by their duly authorized representatives, affix their respective signatures:

**For Contractor**: SMART COMMUNICATIONS HOLDING, INC.

| | | |
|---|---|---|
| DocuSigned by:<br>_[signature]_<br>ECC645FD6EA1464... | 8/23/2021 \| 4:25 PM EDT | Jon Logan |
| **Contractor Signature** | **Date** | **Contractor Name (please print)** |

**COUNTY OF SAN MATEO**

By: _[signature]_ David J. Canepa

Resolution No. 078425

President, Board of Supervisors, San Mateo County

Date: September 14, 2021

ATTEST:

By: _[signature]_

Clerk of Said Board

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

**Exhibit A - Services**

1. **Description of Services to be Performed.**
   Service Provider will provide Inmate Tablet and Video Visitation Services and Postal Mail Elimination System Services within the Maguire Correctional Facility and the Maple Street Correctional Center.

A. **SmartTablet™ and Secure Network**
   1) Contractor will provide the SmartTablet™ system and its entire supporting infrastructure at no cost to County. Services will be provided at the following locations:

   Maguire Correctional Facility – 300 Bradford Street, Redwood City, California
   Maple Street Correctional Center – 1300 Maple Street, Redwood City, California

   a. SmartTablet™ features
      i. The SmartTablet™ is a custom, wireless, ruggedized and correctional grade tablet of our custom specifications that will connect to our secure network.
      ii. The SmartTablet™ software operating system and applications are all custom-compiled for a corrections environment to ensure that only the minimum operating system components and applications are present. The inmate only has access to applications that are approved for their use, and the operating system is only allowed to connect to our own secure wireless network within the facility.
      iii. The network is designed to facilitate applications within a corrections environment. Provider utilizes a deny-by-default policy on all traffic, so nothing may traverse the network unless specifically allowed and enabled. Provider utilizes a defense-in-depth strategy which employs many layers of security. If any one layer of security is breached, there are many others to provide continuing protection.

   b. Grievances, General and Medical Requests
      i. Provider shall provide at no cost to the County or inmates, electronic general and medical requests as well as well as electronic grievance forms via the SmartTablet™ or SmartKiosk™.
      ii. Provider's system presents inmates with a list of available forms, and once a form has been selected and submitted, it is automatically routed to the appropriate person or department for processing.

   c. Law Library
      i. Provider shall provide access via the SmartTablet™ or SmartKiosk™ to a law library at no cost. The law library provides access to Federal and State statutes and case law, as well as a legal dictionary, practice manual, and other legal aides to assist inmates with researching material appropriate for their case.

   d. Electronic Entertainment & Education
      i. Provider shall provide access to its SmartEntertainment™ platform via the SmartTablet™ for streaming basic content (free) and premium content (at a rate of one cent ($.01) per minute).
      ii. Provider will provide free access to its extensive SmartEd™ educational platform via the SmartTablet™, where a full suite of Educational Programs can be made available.

   e. Commissary Hosting and Integration

      i. At County's request, Provider will host County's commissary vendor's menu on Provider's system, at no cost to County.

      ii. At County's request, Provider will integrate with County's jail management system (JMS) at no cost to County.

f. Future Inmate Communication Services

      i. At County's option and request, Provider may provide additional inmate communication services through this contract, including inmate telephone services.

g. Provider shall provide the inmate communication services described herein by way of County's previously installed kiosks and Provider's previously installed SmartTablet™ System, at no cost to County. This includes:

      i. Supporting tablet charging stations
      ii. Two (2) Visit Control Servers
      iii. Two (2) Network Firewalls
      iv. Twenty-three (23) Remote Access Points to connect to WiFi

h. Provider will furnish the proprietary SmartTablet™ on a 1:3 inmate to tablet ratio based on the Average Daily Population ("ADP"). The SmartTablets™ will be provided to inmates free of charge and free of any rental fees.

i. Provider will monitor usage and increase supply as needed or as otherwise agreed by the parties. Sufficient reserve tablets shall also be provided. County shall determine which inmates have access to the SmartTablets™.

j. Distribution and Refurbishment Plan (SmartTablets™)

      i. Provider will provide a tablet charging station and "home base" within each housing unit within the facility. These home bases will be permanently installed into a housing area (e.g. wall mounted). Each home base provides the necessary connections for charging the tablets, as well as a convenient storage location to ensure all tablets are accounted for during non-usage times.

      ii. Each tablet is assigned to a specific housing area and will only allow inmates within that housing area to sign in and use a tablet. Individual tablets are not assigned to specific inmates. Any inmate in a given housing unit may use any tablet that is assigned to that housing unit. If a tablet that an inmate is using stops working, they can return it to a deputy for maintenance, and then take a different tablet and sign on and gain full access to their account and content. Provider will provide to the County a sufficient number of extra SmartTablets™ so that the available number of SmartTablets™ will always meet the approved ratio. In the event a tablet stops working, no longer holds a charge, is damaged, or is otherwise in need of service, facility staff can replace the malfunctioning tablet with a new working SmartTablet™. Contractor will provide pickup and delivery of malfunctioning and replacement SmartTablets™ at no charge to the County.

k. Damage (SmartTablets™)

      i. The tablets provided are ruggedized for use in a correctional setting. However, if an inmate causes intentional damage requiring the device to be repaired, County will be required to fill out a damage report form. Provider will seek restitution from the inmate with the assistance of the County. During the term of the contract, should the number of intentionally damaged tablets exceed twenty

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

percent (20%) of the original provided tablet inventory for a given twelve (12) month period, the facility will be responsible for the cost of the new replacement tablets.

## B. SmartVisit™ Video Visitation System

1) Provider will provide, at no cost to County, a fully functional video visitation system (SmartVisit™) within the Maguire Correctional Facility and the Maple Street Correctional Center, to be accessed at County's existing kiosks and on Provider's existing SmartTablet™ system. The SmartVisit™ video visitation system is available for onsite and remote visits. Provider is exclusively responsible for providing the operating systems, hardware, and application software for this system, and all networking requirements needed for operation of the system. Provider shall be entitled to all revenue derived from the video visitation system.

2) Provider will make the following previously installed kiosks available for video visitation:
   a. Forty-seven (47) lobby kiosks at the Maple Street Correctional Center
   b. Fifty-six (56) inmate-accessible kiosks located at Maple Street Correctional Center
   c. Fifty-four (54) inmate-accessible kiosks at Maguire Correctional Facility

*Provider will work with County to ensure kiosks are installed and operational at the agreed upon locations.*

3) For existing kiosks supplied by a previous vendor which Provider has utilized at County's request and supported to date, Provider will continue to provide support and maintenance to the extent practicable at no cost to County. However, if such kiosks require replacement parts that are no longer readily obtainable due to obsoletion, lack of availability, or otherwise, Provider shall replace such kiosks with its own equipment.

4) Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the video visitation system at County's Facility. These costs do not include the costs of the actual electrical power.

5) Provider will provide County with the capability of monitoring the video visitations, except those visitations deemed to be privileged under law between attorney and client. Provider will maintain a record of all parties of the video visitation system for a period of seven (7) years from the time of the visitation.

6) Friends and Family can access and purchase and schedule the video visitation sessions via the Smartjailmail.com website.

7) Provider will allow each inmate at County's Facility two (2) free video visitation calls per week up to forty-five (45) minutes in length, to satisfy the needs of indigent inmates.

8) Provider shall charge fees for video visitation in the amounts as set forth below, subject to change by mutual agreement of the parties:

| SmartVisit™ VVS Service Rates | | |
|---|---|---|
| Visitation Type | Per Visit Charge | Per Minute Rate |
| Local (On-Site) | N/A | No charge |
| Remote (Off-Site) Scheduled | N/A | $0.05 |
| Remote (Off-Site) On Demand | N/A | $0.05 |

9) Remote video visitation will be made available to inmates 7 days a week, in keeping with the same hours and time availability of the inmate phone system.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

## C. SmartInmate™ Electronic Messaging

1) Provider will provide, at no cost to County, a fully functional electronic messaging system (SmartInmate™). within the Maguire Correctional Facility and the Maple Street Correctional Center. Provider is responsible for providing and installing all of the hardware, software including the operating systems and application software, and all networking requirements needed for the operation, maintenance, and networking of the electronic messaging system. Provider shall be exclusively entitled to all revenue derived from electronic messaging and photo delivery.

2) Provider is responsible for all future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system within the County's correctional facilities. These costs do not include the costs of the actual electrical power.

3) Provider will provide each inmate in County's correctional facilities with credits for two (2) messages per week at no charge, to satisfy the needs of indigent inmates.

4) Provider shall charge fees for electronic messaging services in the amounts as set forth below, subject to change by mutual agreement of the parties:

| SmartInmate™ Electronic Messaging Service Rates | |
|---|---|
| Message Type | Rate |
| Text (up to 30,000 characters) | $0.50 per message |
| Photo Delivery | $1.00 per photo |

5) County shall have the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all electronic messages sent through the electronic messaging system for a period of seven (7) years from the time the message is sent.

6) Friends and family will have the ability to access the electronic messaging and photo delivery system via the SmartInmate.com website.

7) Electronic Messaging Fees. Each email message will be billed at fifty cents ($0.50), which corresponds to 50 credits.

8) Photo Delivery Service. Each approved photo will be billed at one dollar ($1.00), which corresponds to 100 credits.

9) County's Responsibilities (SmartInmate™ Electronic Messaging)
   a. County will provide the Provider with access to the County correctional facilities and space within the facilities, subject to operational security requirements, for Provider to install, network, and maintain the electronic messaging system. Emergency access to the system will be granted as needed Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hours of notice by Provider.

   b. County will include information regarding the SmartInmate™ messaging system in the County's Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

   c. County will provide information regarding the SmartInmate™ messaging system in at least one location next to the inmate mailing address on County's website, with a link to the SmartInmate.com website.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

d.   Upon completion of installation and appropriate system testing, County will allow the electronic messaging to go live within forty-eight (48) hours' notice of system availability.

e.   County will provide an electronic list twice each day of all inmates residing in the County's correctional facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those kiosks and tablets appropriate to their housing assignment.

f.   County will give prompt notice, in writing, to Provider of any trouble or irregularity in the functioning of the electronic messaging system as a whole.

## D. Patented MailGuard® Postal Mail Elimination® System

1)   Provider shall provide its patented MailGuard® Postal Mail Elimination system at no cost to County. Provider's MailGuard® service converts regular incoming postal mail into an electronic document that is delivered to the inmate recipient via the SmartTablets™ or SmartKiosk™ within the County's correctional facilities.

2)   Provider shall provide all the equipment and support services to operate the MailGuard® system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartTablets™ or SmartKiosk™ at no cost to County.

3)   For purposes of this agreement, "routine mail" means all regular incoming correspondence between inmates, family, and friends and excludes all legal mail, packages, books, magazines, periodicals and religious mail. All legal mail, packages, books, magazines, or other non-routine inmate mail will still be sent to County's Facility for delivery.

4)   MailGuard® will only integrate with and transmit incoming routine mail to the SmartTablets™ or SmartKiosk™.

5)   Provider is responsible for all the future costs associated with any modification, reconfiguration, or upgrade of the MailGuard® system at the County correctional facilities. These costs do not include the costs of the actual electrical power.

6)   MailGuard® shall become the Inmates' designated Agent to process and electronically deliver incoming routine inmate mail pursuant to County's mail policy which shall promote the intent of this Agreement.

7)   County will instruct and publish on its website that all incoming routine mail must be sent to the designated Post Office Box for electronic delivery via the MailGuard® system.

8)   Provider shall be solely responsible for the cost of maintaining the Post Office Box designated by the County for incoming routine mail to be sent.

9)   Provider will retrieve incoming routine mail from the designated Post Office Box and process and transmit that mail in an expeditious manner.

10)  Provider will shred all processed mail after 30 days unless the County requests in writing to Provider that all of a particular inmate's mail must be stored.

11)  The MailGuard® public website will allow inmates to log into their account and retrieve electronic copies of their processed incoming routine mail for thirty (30) days from the date of their release from the County's Facility.

12)  Provider will maintain electronic records for a period of seven (7) years from the date of the inmate's release from the County's Facility. During the term of this Agreement and upon request,

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

we will provide County with electronic copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to County's Facility.

13) MailGuard® will provide County with the capability of monitoring and reviewing all electronic mail sent through the MailGuard® system, except those messages deemed to be privileged under law between attorney and client.

14) <u>County's Responsibilities (MailGuard®)</u>

    a. County shall be responsible for informing inmates and inmates' friends and family that all routine correspondence must be sent to the designated MailGuard® Post Office Box. County will include information regarding the MailGuard® system in the Inmate Handbook and in all other areas where information regarding the Inmate Mail Policy and Procedures are located.

    b. County will provide information regarding County's incoming postal mail policy, the MailGuard® system and the MailGuard® procedure for processing and/or disposing of all incoming mail and pictures in at least one location next to the inmate mailing address on the County's website and very clearly state that all incoming routine mail MUST be mailed to the MailGuard® designated Post Office Box.

    c. County will instruct on its website that all incoming routine mail must be sent to the designated Post Office Box for electronic delivery via the MailGuard® system and display information regarding the County's incoming postal mail policy, the MailGuard® system and the MailGuard® procedure for processing and/or disposing of all incoming mail and pictures.

    d. Should the County receive incoming routine mail instead of the designated Post Office Box, the County will be responsible for the delivery of said mail to MailGuard® for processing.

    e. Upon completion of installation and appropriate system testing, County will allow the MailGuard® system to go live within forty-eight (48) hours' notice of system availability.

    f. County will provide a list electronically twice each day of all inmates residing in the County Jail Facilities and their current housing assignments.

    g. County will give prompt notice in writing to Provider of any trouble or irregularity in the functioning of the MailGuard® system.

E. <u>Patented MailGuard Legal™ System</u>

1) Provider is the exclusive licensee of MailGuard Legal™, the patented postal mail elimination system for legal mail.

2) Provider will provide, install, and maintain its patented MailGuard Legal™ Mail system, which will include a sufficient number of MailGuard Legal™ Mail Scanning Carts to handle the volume of legally privileged mail or other mail deemed to be legal mail (the "Legal Mail") to be processed by the Facility.

3) County acknowledges and agrees that Legal Mail must be opened in the presence of the inmate.

4) Provider will install and maintain its proprietary software and the additional infrastructure necessary to operate its patented MailGuard Legal™ system, at no cost to County.

5) The Legal Mail may be scanned in the presence of the inmate for electronic delivery to the inmate or printed to hard copy for physical delivery to the inmate, in accordance with Provider's patented

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

MailGuard Legal™ system.

6) County understands and agrees that the MailGuard Legal™ system does not allow for any electronic copies of Legal Mail to be monitored, reviewed, or investigated.

7) County agrees to adhere to all applicable laws in order to maintain the privileged nature of privileged communications while using or supervising the inmates' use of Provider's patented MailGuard Legal™ Mail system.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

**Exhibit B - Rates & Fees**

1. **Rates.**

   A. SmartEntertainment™ Streaming Media Platform Rates.

   | SmartEntertainment™ Streaming Media Platform Rates | |
   |---|---|
   | **Entertainment Category** | **Rate** |
   | Basic Content | No Charge |
   | Premium Content | $0.01 per minute |

   B. SmartVisit™ Video Visitation Rates. Provider will provide every inmate with two onsite video visits per week at no cost. A week begins on Sunday at 12:00 a.m. and ends on Saturday at 11:59 p.m. Onsite visits will occur in the lobby of the Maple Street Correctional Center. Inmates will be allowed access to additional video visits during their recreation time at the discretion of staff at a cost of $0.05 per minute.

   | SmartVisit™ VVS Service Rates | | |
   |---|---|---|
   | **Visitation Type** | **Per Visit Charge** | **Per Minute Rate** |
   | Local (On-Site) | N/A | No charge |
   | Remote (Off-Site) Scheduled | N/A | $0.05 |
   | Remote (Off-Site) On Demand | N/A | $0.05 |

   C. SmartInmate™ Electronic Messaging Service Rates. Provider will provide every inmate with two (2) SmartInmate™ Electronic Messages per week at no cost. A week begins on Sunday at 12:00 a.m. and ends on Saturday at 11:59 p.m.

   | SmartInmate™ Electronic Messaging Service Rates | |
   |---|---|
   | **Message Type** | **Rate** |
   | Text (up to 30,000 characters) | $0.50 per message |
   | Photo Delivery | $1.00 per photo |

2. The following parties shall not be charged any fees for video visits:
   1. Deputy District Attorneys and District Attorney Inspectors
   2. Defense attorneys and their investigators
   3. Correctional Health and Forensic Mental Health staff
   4. Service League of San Mateo County employees
   5. Religious Counselors
   6. Sheriff's Office Program Service Employees
   7. Choices Program staff
   8. Law Enforcement personnel
   9. Rape Trauma Services counselors
   10. Judges, court clerks, and support personnel
   11. Other service providers approved by the Sherriff's Office Classification Unit

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

# ATTACHMENT I

## Assurance of Compliance with Section 504 of the Rehabilitation Act of 1973, as Amended

The undersigned (hereinafter called "Contractor(s)") hereby agrees that it will comply with Section 504 of the Rehabilitation Act of 1973, as amended, all requirements imposed by the applicable DHHS regulation, and all guidelines and interpretations issued pursuant thereto.

The Contractor(s) gives/give this assurance in consideration of for the purpose of obtaining contracts after the date of this assurance. The Contractor(s) recognizes/recognize and agrees/agree that contracts will be extended in reliance on the representations and agreements made in this assurance. This assurance is binding on the Contractor(s), its successors, transferees, and assignees, and the person or persons whose signatures appear below are authorized to sign this assurance on behalf of the Contractor(s).

The Contractor(s): (Check a or b)

☐ a. Employs fewer than 15 persons.

☒ b. Employs 15 or more persons and, pursuant to section 84.7 (a) of the regulation (45 C.F.R. 84.7 (a), has designated the following person(s) to coordinate its efforts to comply with the DHHS regulation.

| | |
|---|---|
| **Name of 504 Person:** | Lisa Eddy |
| **Name of Contractor(s):** | Smart Communications Holding, Inc. |
| **Street Address or P.O. Box:** | 10491 72nd Street |
| **City, State, Zip Code:** | Seminole, FL 33777 |

**I certify that the above information is complete and correct to the best of my knowledge**

| | |
|---|---|
| **Signature:** | DocuSigned by: *[signature]* E08B45FDBEA4484... |
| **Title of Authorized Official:** | CEO |
| **Date:** | 8/23/2021 | 4:25 PM EDT |

*Exception: DHHS regulations state that: "If a recipient with fewer than 15 employees finds that, after consultation with a disabled person seeking its services, there is no method of complying with (the facility accessibility regulations) other than making a significant alteration in its existing facilities, the recipient may, as an alternative, refer the handicapped person to other providers of those services that are accessible."

*Issued by County of San Mateo Contract Compliance Committee August 5, 2013*

# Terms of Service

**Revised: January 30, 2016**

Welcome to SmartJailMail.com, a convenient way for inmates to communicate with their friends and family. This service is operated by Smart Communications Holdings, Inc. and its affiliated companies and referred to as SmartJailMail.com. By using the SmartJailMail.com Website, (the "Website") you agree to be bound by these Terms of Service (this "Agreement"), whether or not you register as a user of SmartJailMail.com ("Member"). If you wish to become a Member and make use of the SmartJailMail.com service (the "Service"), please read these Terms of Service. If you object to anything in this Agreement or the SmartJailMail.com Privacy Policy, do not use the Website or the Service. The Terms of Service are subject to change by SmartJailMail.com at any time, effective upon posting on the SmartJailMail.com website, and your use of the Service after such posting will constitute acceptance by you of such changes.

1. **Acceptance of Terms of Service Agreement**

   a. **Electronic Agreement** - This Agreement is an electronic contract that sets out the legally binding terms of your use of the Website and your membership in the Service. This Agreement may be modified by SmartJailMail.com from time to time, such modifications to be effective upon posting by SmartJailMail.com on the Website. This Agreement includes SmartJailMail.com's Acceptable Use Policy for Content Posted on the Website, SmartJailMail.com's Privacy Policy, SmartJailMail.com's subscription policies and any notices regarding the Website. By accessing the Website or becoming a Member, you accept this Agreement and agree to the terms, conditions and notices contained or referenced herein.

   b. **Electronic Form** - By accessing the Website or becoming a Member, you consent to have this Agreement provided to you in electronic form.

   c. **Non-electronic Copy** - You have the right to receive this Agreement in non-electronic form. You may request a non-electronic copy of this Agreement either before or after you electronically sign the Agreement. To receive a non-electronic copy of this Agreement, please send an e-mail to support@SmartJailMail.com or a letter and self-addressed stamped envelope to: SmartJailMail.com, 4522 W North B St, Tampa, FL 33609.

   d. **Withdrawing Your Consent** - You have the right at any time to withdraw your consent to have this Agreement provided to you in electronic form.

      i. **Effect** - Should you choose to withdraw your consent to have this Agreement provided to you in electronic form, we will discontinue your then-current username and password. This means that you will not have the right to use the Service unless, and until, we issue you a new username and password. We only will issue you a new username and password after we receive a signed copy of a non-electronic version of this Agreement, which we will send to you upon request.

      ii. **Notice** - To withdraw your consent and/or request a non-electronic copy of this Agreement, please send an email to support@SmartJailMail.com or a letter and self-addressed stamped

envelope to: SmartJailMail.com, 4522 W North B St, Tampa, FL 33609.

    iii. **Prospective Nature** - Your withdrawal of consent shall be effective within a reasonable time after we receive your withdrawal notice described above. Your withdrawal of consent will not affect the legal validity or enforceability of the Agreement provided to, and electronically signed by, you prior to the effective date of your withdrawal.

e. **Access and Retention** - In order to access and retain this electronic Agreement, you must have access to the World Wide Web, either directly or through devices that access web-based content, and pay any service fees associated with such access. In addition, you must use all equipment necessary to make such connection to the World Wide Web, including a computer and modem or other access device. Please print a copy of this document for your records. To retain an electronic copy of this Agreement, you may save it into any word processing program. Via, the Website, we will notify you of any changes in the hardware or software requirements needed to access and/or retain this Agreement that create a material risk that you will not be able to continue to access and/or retain this electronic Agreement.

2. **Eligibility** - You must be at least eighteen (18) years of age to register as a Member of SmartJailMail.com. Membership in the Service is void where prohibited. By using the Website, you represent and warrant that you have the right, authority and capacity to enter into this Agreement and to abide by all of the terms and conditions of this Agreement. Those under the age of 18 may use the Website under the authorization and supervision of a registered Member.

3. **Membership and Subscription; Pricing** - You may become a Member of the Service at no cost. As a Member, you will have the ability to participate in some, but not all, of the features and services available within the Service. In order to access additional features and services, including the ability to communicate with other Members, you must become a paying subscriber to the Service. Please note that the subscription policies that are disclosed to you in subscribing to the service are deemed part of this Agreement. Please see Billing Details for a description of such policies. For purposes of this Agreement the term "Member" includes subscribers, unless where its usage indicates otherwise. From time to time, SmartJailMail.com may remove the accounts of non-subscribers.

4. **Term** - This Agreement will remain in full force and effect while you use the Website and/or are a Member. You may terminate your membership and/or subscription at any time, for any reason, by following the instructions in Account Settings, or by sending SmartJailMail.com written notice of termination to SmartJailMail.com, 4522 W North B St, Tampa, FL 33609 or email notice of termination to support@SmartJailMail.com. If you resign or cancel your membership and/or subscription via the SmartJailMail.com site, to help SmartJailMail.com analyze and improve the Service, you may be asked to provide a reason for your resignation/cancellation. You may bypass this brief resignation survey page and continue the resignation/cancellation process by clicking the "Continue Cancellation" or other similar button on the page. SmartJailMail.com may terminate your membership and/or subscription by sending notice to you at the email address you provide in your application for membership, or such other email address as you may later provide to SmartJailMail.com. If SmartJailMail.com terminates your membership in the Service because you have breached this Agreement, you will not be entitled to any refund of unused subscription fees. All decisions regarding the termination of accounts shall be made in the sole discretion of SmartJailMail.com. SmartJailMail.com is not required to provide you notice prior to terminating your membership and/or subscription. SmartJailMail.com is not required, and may be

prohibited, from disclosing a reason for the termination of your account. Even after your membership or subscription is terminated, this Agreement will remain in effect. All terms that by their nature may survive termination of this Agreement shall be deemed to survive such termination.

5. **Non-commercial Use by Members** - The Website is for the personal use of individual Members only and may not be used in connection with any commercial endeavors that have not been approved by SmartJailMail.com in advance in writing. Organizations, companies, and/or businesses may not become Members and should not use the Service or the Website for any purpose. Illegal and/or unauthorized uses of the Website, including collecting usernames and/or email addresses of members by electronic or other means for the purpose of sending unsolicited email and unauthorized framing of or linking to the Website may be investigated, and appropriate legal action will be taken, including without limitation, civil, criminal, and injunctive redress. Use of the Website is with the permission of SmartJailMail.com, which may be revoked at any time, for any reason, in SmartJailMail.com's sole discretion.

6. **Account Security** - You are responsible for maintaining the confidentiality of the username and password that you designate during the Registration process, and you are fully responsible for all activities that occur under your username and password. You agree to (a) immediately notify SmartJailMail.com of any unauthorized use of your username or password or any other breach of security, and (b) ensure that you exit from your account at the end of each session. SmartJailMail.com will not be liable for any loss or damage arising from your failure to comply with this provision. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information.

7. **Your Interactions with Other Members** - You are solely responsible for your interactions with other Members. You understand that SmartJailMail.com does not in any way screen its Members, nor does SmartJailMail.com inquire into the backgrounds of its Members or attempt to verify the statements of its Members. SmartJailMail.com makes no representations or warranties as to the conduct of Members. In no event shall SmartJailMail.com be liable for any damages whatsoever, whether direct, indirect, general, special, compensatory, consequential, and/or incidental, arising out of or relating to the conduct of you or anyone else in connection with the use of the Service, including without limitation, bodily injury, emotional distress, and/or any other damages resulting from communications with other registered users of this Service or persons you meet through this Service. You agree to take reasonable precautions in all interactions with other Members of the Service. You should not provide your financial information (for example, your credit card or bank account information) to other Members.

8. **Content on SmartJailMail.com**

   a. **Proprietary Rights** - SmartJailMail.com owns and retains license to all proprietary rights in the Website and the Service. The Website contains the copyrighted material, trademarks, and other proprietary information of SmartJailMail.com, and its licensors. Except for that information which is in the public domain or for which you have been given written permission, you may not copy, modify, publish, transmit, distribute, perform, display, or sell any such proprietary information.

9. **Content Posted by You on SmartJailMail.com**

   a. You are solely responsible for the Content that you publish or display (hereinafter, "post") on the Service, or transmit to other Members. You will not post on the Service, or transmit to other

Members, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights (including, but not limited to, intellectual property rights, and rights of privacy and publicity). You will not provide inaccurate, misleading or false information to the Company or to any other Member. If information provided to SmartJailMail.com, or another Member, subsequently becomes inaccurate, misleading or false, you will promptly notify SmartJailMail.com of such change.

b. You understand and agree that SmartJailMail.com or the correctional facility where inmates are housed may review and delete any content, messages, or photos (collectively, "Content"), in each case in whole or in part, that in the sole judgment of SmartJailMail.com or the correctional facility violate this Agreement or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of Members.

c. By posting Content to SmartJailMail.com, you automatically grant, and you represent and warrant that you have the right to grant, to SmartJailMail.com, its affiliates, licensees and successors, an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, reproduce, adapt, modify and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. You further represent and warrant that public posting and use of your content by SmartJailMail.com will not infringe or violate the rights of any third party.

d. The following is a partial list of the kind of Content that is illegal or prohibited on the Website. SmartJailMail.com reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates this provision, including without limitation, removing the offending communication from the Service and terminating the membership of such violators. It includes, but is not limited to, Content that:

- is patently offensive to the online community, such as Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;

- harasses or advocates harassment of another person;

- involves the transmission of "junk mail", "chain letters," or unsolicited mass mailing or "spamming";

- promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;

- promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated images, audio or video, or links to pirated images, audio or video files;

- contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);

- provides material that exploits people under the age of 18 in a sexual or violent manner, or

solicits personal information from anyone under the age of 18;

- provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;

- solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and

- engages in commercial activities and/or sales without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

e. Your use of the Service, including but not limited to the Content you post on the Service, must be in accordance with any and all applicable laws and regulations.

f. You may not engage in advertising to, or solicitation of, other Members. This includes but is not limited to solicitation or advertising to buy or sell any products or services through the Service or networking for commercial purposes. You may not transmit any chain letters or junk email to other Members. It is a violation of these rules to use any information obtained from the Service in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit, or sell to any Member without our prior explicit consent. In order to protect our Members from such advertising or solicitation, we reserve the right to restrict the number of emails which a Member may send to other Members in any 24-hour period to a number which we deem appropriate in our sole discretion.

g. All information you include in your Member profile must be accurate, current and complete.

10. **Prohibited Activities** - SmartJailMail.com reserves the right to investigate and terminate your membership if you have misused the Service, or behaved in a way which could be regarded as inappropriate or whose conduct is unlawful or illegal. The following is a partial list of the type of actions that you may not engage in with respect to the Service:

- You will not use the Service to provide legal services, legal advice, or in an official capacity as an attorney or bondsperson, or to send any communications that should be deemed private, privileged, or confidential unless a specific agreement to do so has been established between You and SmartJailMail.com.

- You will not copy and paste or otherwise pass messages between or act as a corrier between inmates. Inmates will not ask other users to pass messages to another inmate.

- You will not impersonate any person or entity.

- You will not "stalk" or otherwise harass any person.

- You will not express or imply that any statements you make are endorsed by SmartJailMail.com without our specific prior written consent.

- You will not use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, "data mine", or in any way reproduce or circumvent the navigational structure or presentation of the Service or its contents.

- You will not post, distribute or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior consent of the owner of such proprietary rights.

- You will not remove any copyright, trademark or other proprietary rights notices contained in the Service.

- You will not interfere with or disrupt the Services or the site or the servers or networks connected to the Services or the site.

- You will not post, email or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment.

- You will not forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service.

- You will not "frame" or "mirror" any part of the Service or the Website, without SmartJailMail.com's prior written authorization. You also shall not use meta tags or code or other devices containing any reference to SmartJailMail.com or the Service or the site in order to direct any person to any other web site for any purpose.

- You will not modify, adapt, sublicense, translate, sell, reverse engineer, decipher, decompile or otherwise disassemble any portion of the Service or the Website or any software used on or for the Service or cause others to do so.

11. **Customer Service** - SmartJailMail.com provides assistance and guidance through its customer care representatives. When communicating with our customer care representatives, you may not to be abusive, obscene, profane, offensive, sexist, threatening, harassing, racially offensive, or otherwise behave inappropriately. If we feel that your behavior towards any of our customer care representatives or other employees is at any time threatening or offensive, we reserve the right to immediately terminate your membership and you will not be entitled to any refund of unused subscription fees.

12. **Subscriptions; Charges on Your Billing Account**

    a. **General** - SmartJailMail.com bills you through an online account (your "Billing Account") for use of the Service. You agree to pay SmartJailMail.com all charges at the prices then in effect for any use of the Service by you or other persons (including your agents) using your Billing Account, and you authorize SmartJailMail.com to charge your chosen payment provider (your "Payment Method") for the Service. You agree to make payment using that selected Payment Method. SmartJailMail.com reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

    b. **Recurring Billing** - SmartJailMail.com does not make use of recurring billing. Each charge is authorized at the point of purchase.

    c. **Current Information Required** - YOU MUST PROVIDE CURRENT, COMPLETE AND ACCURATE INFORMATION FOR YOUR BILLING ACCOUNT. YOU MUST PROMPTLY UPDATE ALL INFORMATION TO KEEP YOUR BILLING ACCOUNT CURRENT, COMPLETE AND ACCURATE (SUCH AS A CHANGE IN BILLING ADDRESS, CREDIT CARD NUMBER, OR CREDIT CARD

EXPIRATION DATE), AND YOU MUST PROMPTLY NOTIFY SmartJailMail.com IF YOUR PAYMENT METHOD IS CANCELED (E.G., FOR LOSS OR THEFT) OR IF YOU BECOME AWARE OF A POTENTIAL BREACH OF SECURITY, SUCH AS THE UNAUTHORIZED DISCLOSURE OR USE OF YOUR USER NAME OR PASSWORD. CHANGES TO SUCH INFORMATION CAN BE MADE AT ACCOUNT SETTINGS.

d. **Payment Method** - The terms of your payment will be based on your Payment Method and may be determined by agreements between you and the financial institution, credit card issuer or other provider of your chosen Payment Method (the "Payment Method Provider"). If SmartJailMail.com does not receive payment from your Payment Method Provider, you agree to pay all amounts due on your Billing Account upon demand.

e. **Reaffirmation of Authorization** - Your non-termination or continued use of the Service reaffirms that SmartJailMail.com is authorized to charge your Payment Method. SmartJailMail.com may submit those charges for payment and you will be responsible for such charges. This does not waive SmartJailMail.com's right to seek payment directly from you. Your charges may be payable in advance, in arrears, per usage, or as otherwise described when you initially subscribed to the Service.

f. **No Refunds** - SmartJailMail.com will not issue refunds on any portion of fees charged or services that you later decide not to use.

g. **Liability** - In some situations a correctional facility may refuse to deliver a message or attachment to an inmate. In these situations, regardless of the reason for refusal, neither the correctional facility nor SmartJailMail.com shall be liable to you for the cost of credits used to send the message and/or attachment. If an inmate is relocated, transferred, discharged, placed in confinement, has their account disabled, or otherwise is temporarily or permanently no longer able to use the Service for any reason, neither the correctional facility nor SmartJailMail.com shall be liable to you for the cost of credits used to send unread messages and/or attachments, nor for unused credits remaining on your account or unused credits that have been transferred to the inmate's account.

13. **Modifications to Service** - SmartJailMail.com reserves the right at any time to modify or discontinue, temporarily or permanently, the Service (or any part thereof) with or without notice. You agree that SmartJailMail.com shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Service.

14. **Blocking of IP Addresses** - In order to protect the integrity of the Service, SmartJailMail.com reserves the right at any time in its sole discretion to block Members from certain IP addresses from accessing the Website.

15. **Copyright Policy** - You may not post, distribute, or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior written consent of the owner of such proprietary rights. Without limiting the foregoing, if you believe that your work has been copied and posted on the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with the following information: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest; a description of the copyrighted work that you claim has

been infringed; a description of where the material that you claim is infringing is located on the Website; your address, telephone number, and email address; a written statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf. SmartJailMail.com's Copyright Agent for notice of claims of copyright infringement can be reached as follows: SmartJailMail.com Legal, 4522 W North B St, Tampa, FL 33609.

16. **Member Disputes -** You are solely responsible for your interactions with other SmartJailMail.com Members. SmartJailMail.com reserves the right, but has no obligation, to monitor disputes between you and other Members.

17. **Privacy -** Use of the Website and/or the Service should not be considered private. Messages between Members may be monitored by SmartJailMail.com or the correctional facility that houses inmates. Use of the Service is Governed by our Privacy Policy.

18. **Disclaimers -** SmartJailMail.com is not responsible for any incorrect or inaccurate Content posted on the Website or in connection with the Service, whether caused by users of the Website, Members or by any of the equipment or programming associated with or utilized in the Service. SmartJailMail.com is not responsible for the conduct, whether online or offline, of any user of the Website or Member of the Service. SmartJailMail.com assumes no responsibility for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction or unauthorized access to, or alteration of, user or Member communications. SmartJailMail.com is not responsible for any problems or technical malfunction of any telephone network or lines, computer online systems, servers or providers, computer equipment, software, failure of email or players on account of technical problems or traffic congestion on the Internet or at any Website or combination thereof, including injury or damage to users and/or Members or to any other person's computer related to or resulting from participating or downloading materials in connection with the Web and/or in connection with the Service. Under no circumstances will SmartJailMail.com or any of its affiliates, advertisers, promoters or distribution partners be responsible for any loss or damage, including personal injury or death, resulting from anyone's use of the Website or the Service, any Content posted on the Website or transmitted to Members, or any interactions between users of the Website, whether online or offline. The Website and the Service are provided "AS-IS" and SmartJailMail.com expressly disclaims any warranty of fitness for a particular purpose or non-infringement. SmartJailMail.com cannot guarantee and does not promise any specific results from use of the Website and/or the Service.

19. **Links -** The Service may provide, or third parties may provide, links to other World Wide Web sites or resources. Because SmartJailMail.com has no control over such sites and resources, you acknowledge and agree that SmartJailMail.com is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products or other materials on or available from such sites or resources. You further acknowledge and agree that SmartJailMail.com shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with the use of, or reliance upon, any such Content, goods or services available on or through any such site or resource.

20. **Limitation on Liability -** Except in jurisdictions where such provisions are restricted, in no event will SmartJailMail.com be liable to you or any third person for any indirect, consequential, exemplary,

incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if SmartJailMail.com has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, SmartJailMail.com's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to SmartJailMail.com for the Service during the term of membership.

21. **U.S. Export Controls** - Software from this Website (the "Software") is further subject to United States export controls. No Software may be downloaded from the Website or otherwise exported or re-exported (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Software, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

22. **Jurisdiction and Choice of Law** - If there is any dispute arising out of the Website and/or the Service, by using the Website, you expressly agree that any such dispute shall be governed by the laws of the State of Florida, without regard to its conflict of law provisions, and you expressly agree and consent to the exclusive jurisdiction and venue of the state and federal courts of the State of Florida, in Manatee County, for the resolution of any such dispute.

23. **Indemnity by You** - You agree to indemnify and hold SmartJailMail.com, its subsidiaries, affiliates, officers, agents, and other partners and employees, harmless from any loss, liability, claim, or demand, including reasonable attorney's fees, made by any third party due to or arising out of your use of the Service in violation of this Agreement and/or arising from a breach of this Agreement and/or any breach of your representations and warranties set forth above.

24. **No Third Party Beneficiaries** - You agree that, except as otherwise expressly provided in this Agreement, there shall be no third party beneficiaries to this Agreement.

25. **Other** - This Agreement contains the entire agreement between you and SmartJailMail.com regarding the use of the Website and/or the Service. If any provision of this Agreement is held invalid, the remainder of this Agreement shall continue in full force and effect.

Please contact us with any questions regarding this agreement.

## Required Notifications

Some of the icons on this website are used under license from the following providers:

- Basic Icon Set 1 & 2 from Pixel Mixer (http://www.iconarchive.com/artist/pixelmixer.html)
- Finance Icon Set from VisualPharm (http://www.visualpharm.com/)

Copyright © 2022 by Smart Communications. All Rights Reserved.
Privacy Policy (/privacy-policy.cfm) - Terms of Service (/terms-of-service.cfm) - View in English (/terms-of-service.cfm?setLang=en) or Español (/terms-of-service.cfm?setLang=es)

EXHIBIT 8

## Chad E. DeVeaux

| | |
|---|---|
| **From:** | Stephanie C Krent <stephanie.krent@knightcolumbia.org> |
| **Sent:** | Wednesday, April 26, 2023 12:19 PM |
| **To:** | Chad E. DeVeaux; cara@eff.org; pgonzalez@socialjusticelaw.org |
| **Cc:** | Patrick M. Ryan; Chris W. Gribble; Taylor Yamahata; Maggie M. Lopez |
| **Subject:** | Re: Johnson v. San Mateo Cnty., et al., Case No. 5:22-cv-01342-BLF |

Chad,

Thanks for reaching out. Plaintiffs do not agree that *A.B.O. Comix* should be related to *Johnson*, and can't stipulate to a motion seeking relation of the two cases.

Stephanie

**From:** Chad E. DeVeaux <cdeveaux@BZBM.com>
**Date:** Tuesday, April 25, 2023 at 6:55 PM
**To:** Stephanie C Krent <stephanie.krent@knightcolumbia.org>, cara@eff.org <cara@eff.org>, pgonzalez@socialjusticelaw.org <pgonzalez@socialjusticelaw.org>
**Cc:** Patrick M. Ryan <pryan@BZBM.com>, Chris W. Gribble <cgribble@BZBM.com>, Taylor Yamahata <tyamahata@BZBM.com>, Maggie M. Lopez <mlopez@BZBM.com>
**Subject:** Johnson v. San Mateo Cnty., et al., Case No. 5:22-cv-01342-BLF

Stephanie,

We have reviewed *Johnson v. San Mateo Cnty., et al.*, Case No. 5:22-cv-01342-BLF, referenced in footnote 1 to your motion to relate the *A.B.O.* and *Prasad* cases. We believe that *Johnson* potentially implicates L.R. 3-12's relatedness factors, such that we are obligated by L..R. 3-12(b) to file an administrative motion whether cases should be related in that case. Are you willing to stipulate that *A.B.O.* is related to *Johnson*?

Best, Chad

**Chad DeVeaux**

**Principal**

**BARTKO ZANKEL BUNZEL MILLER**

One Embarcadero Center, Suite 800

San Francisco, CA  94111
Main:   (415) 956-1900

Direct: (415) 291-4536

Fax:     (415) 956-1152

cdeveaux@bzbm.com

www.bzbm.com